## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JONATHAN TORRES, CHRISTINE JACKSON, DONALD JACKSON, ASHLEY MCCONNELL, ROXANNE GANT, GERALD THOMAS, and CORY BEADLES, individually and on behalf of all others similarly situated, | CASE NO.: 6:16-cv-210-Orl-40DAB<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | |
| vs. | |
| WENDY'S INTERNATIONAL LLC, | |
| Defendant. | |

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
### AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Christine Jackson, Donald Jackson, Ashley McConnell, and Gerald Thomas

hereby move for certification of the following class pursuant to rule 23(a) and (b)(3), FED. R. CIV.

P., or in the alternative, for certification of an issue class under rule 23(c)(4):

> All persons residing in the United States who made a credit or debit card purchase at any Wendy's location affected by the Data Breach from October 1, 2015 through June 9, 2016 (the "Nationwide Class").[1]

Additionally, Plaintiffs seek certification of consumer protection claims under New York,

New Jersey, and Tennessee law.

## I.     INTRODUCTION

Wendy's failure to implement adequate data security to protect the payment card data and

other personally-identifiable information ("PII") of its customers (collectively, "Data") resulted in

a widespread data breach. As a result of Wendy's shoddy security practices, this data breach

---

[1] Should the Court decide that certification of a nationwide class is not warranted, Plaintiffs would alternatively request certification of statewide classes for: New York, Tennessee, and New Jersey.

remained undetected for a 9-month period, affected more than 1,000 restaurants, and resulted in the Class members' Data being exposed to and accessed by cyber-criminals (the "Data Breach").

This case is naturally suited for resolution on a class-wide basis. Each named Plaintiff and each absent class member was injured by the same Data Breach. Wendy's inadequate data security practices are at the root of each claim. Whether and to what extent Wendy's had an obligation to provide security of its customer's Data and whether such obligations were violated is the same question and answer for each putative class member. The remedies available to Class members will also be similar, and all Class members would be entitled to the same injunctive relief to protect them from future harm. Because Wendy's data security practices uniformly apply to all Class members, common issues will predominate the trial of all claims arising from the Data Breach.

Additionally, the costs required for individual consumers to litigate their claims, which stem from a highly-technical data breach, against a multi-national company such as Wendy's, would far surpass the individual damages to be recovered. But collectively, Class members can present a detailed and convincing case that Wendy's data security practices were unreasonable and led to the Data Breach that caused harm to each Class member.

For these reasons, and those discussed further herein, the Court should certify Plaintiffs' claims pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## II.     STATEMENT OF FACTS

According to the documents produced in this matter, Wendy's sets minimum technology requirements for its restaurants – both corporate and franchises.  These requirements include, among other things, use of certain, approved POS systems, hardware, software, technology vendors, and installers.  Through these requirements, Wendy's set the standards that its restaurants must follow for its data systems, particularly the POS systems.  Documents, only recently

produced, indicate that beginning in the fall of 2015 through at least the Spring of 2016 Wendy's underwent a system-wide implementation of end-user software, including firewall protection, for all of its restaurants.

On January 27, 2016, Wendy's announced that it was investigating unusual activity involving payment cards at some of its restaurants. Over the next several months, Wendy's revealed that it had left its customers' data unprotected and hackers had accessed it by using malware to attack point of sale ("POS") systems at Wendy's franchise restaurants (the "Data Breach").  On June 9, 2016, Wendy's discovered that the Data Breach involved two malware variants affecting POS systems. The Data Breach was widespread; it affected over 1,000 restaurants during a nine-month period, exposing the Data of potentially tens of millions of customers.

According to the corporate statements released by Wendy's, Defendant undertook investigation of the Data Breach at its restaurants and worked to ensure that the malware had been disabled from POS systems where it had been discovered.[2] For those customers who saw the notices and contacted Defendant, Wendy's offered "one year of complimentary fraud consultation and identity restoration services to all customers who used a payment card at a potentially affected restaurant during the time when the restaurant may have been affected."[3]

## III.    ARGUMENT

Class actions serve three essential purposes: to (1) facilitate judicial economy by avoiding multiple suits on the same subject matter; (2) provide a feasible means for asserting the rights of those who would have no realistic day in court if a class action were not available; and (3) deter

---

[2] *See*, series of corporate notices and updates regarding the Data Breach, *available at*: https://www.wendys.com/en-us/about-wendys/the-wendys-company-updates (last updated Dec. 15, 2017).
[3] *Id.*

inconsistent results, assuring a uniform determination of rights and liabilities. *American Pipe & Constr., Co. v. Utah*, 414 U.S. 538, 550 (1974). A district court has broad discretion to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).

### A.  The Named Plaintiffs Have Standing.

The first step in the examination of class certification begins with a determination of constitutional standing. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). A plaintiff must show that she is "part of the class" and that she "personally suffered" the "same injury" as others in the class. *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (quoting *Prado-Steiman*, 221 F.3d at 1279). Plaintiffs have demonstrated their standing in their responses to Defendants' motions to dismiss and motion for summary judgment. *E.g.*, ECF Nos. 35, 79, 118 (opposition briefs).

### B.  The Proposed Class Is Adequately Defined and Ascertainable.

"Before establishing the explicit requirements of Rule 23(a), a plaintiff must first establish that the proposed Class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker, Co.,* 303 F.R.D. 679, 684 (S.D. Fla. 2014). This requirement asks (i) whether members of the proposed class "can be ascertained by reference to objective material," and (ii) whether analysis of that objective criteria is "administratively feasible,"[4] such that "identifying class members [would be] a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon Cty. Greyhound Park, Inc.,* 562 F. App'x 782, 787 (11th Cir. 2014); *Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015).

---

[4] The Ninth Circuit Court of Appeals has recently joined the Sixth, Seventh, and Eighth Circuits in holding that Rule 23(a) does not impose an administrative feasibility requirement *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification, and the policy concerns that have motivated [other Circuits] to adopt a separately articulated requirement are already addressed by the Rule. We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement.").

The definition of the class uses only objective criteria—limiting the class to those who used a payment card, during the Data Breach, at a restaurant impacted by the Data Breach—and is thus "adequately defined" and "clearly ascertainable." Moreover, class members can be identified through the account statements of the payment card they used at Wendy's during the period of the Data Breach.[5] The class is thus ascertainable.

### C.  The Proposed Class Satisfies Rule 23(a).

Class certification is appropriate when the movant demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. FED. R. CIV. P. 23. Rule 23(a) requires (i) the proposed class to be so numerous that joinder is impracticable (numerosity); (ii) common questions of law and fact among the class members (commonality); (iii) that the named representative's claims are typical of those of the class (typicality); and (iv) that both the named representatives and their counsel possess the ability to adequately represent the interests of the class (adequacy). FED. R. CIV. P. 23(a); *see Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009). In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). A court should only consider "the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau,* 576 F.3d at 1190. Indeed, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of certification. *Id.*

---

[5] Defendant has recently suggested, in its December 11, 2017 interrogatory responses, that it can ascertain the payment card numbers exposed to third parties as a result of the Data Breach, but is unable to provide this information to the extent it is subject to a Court order that precludes its disclosure in this case. Ex. A (Response to Interrogatory No. 7). Discovery is ongoing, and Plaintiffs intend to confer with Defendant about this discovery and potential alternative means to ascertain the class.

### 1.  *The Class Meets Rule 23(a)(1)'s Numerosity Requirement*

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see also, Fabricant v. Sears Roebuck, et al.*, 202 F.R.D. 310, 313 (S.D. Fla. 2010). There is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (citing *Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Courts are permitted to "accept common sense assumptions" about the numerosity requirement. *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001), *aff'd* 305 F.3d 145 (3rd Cir. 2002). It is not necessary for plaintiffs to demonstrate that they know the exact size of the class to satisfy to satisfy numerosity. *See, e.g., Evans v. U.S. Pipe & Foundry Company*, 696 F.2d 925, 930 (11th Cir. 1983). Generally, the numerosity requirement is met if the class has 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

According to Wendy's 30(b)(6) designee, over 1,000 stores were impacted by the malware over a nine-month period: From October 25, 2015 to February 14, 2016, 221 stores were impacted by Variant A. Ex. B, 30(b)(6) Tr., 53:17-21. Between November 27, 2015 and June 9, 2016, 805 stores were impacted by Variant B. *Id.* at 95:1- 10, 100:3-12. In light of the numerous customers at each of these hundreds of locations, numerosity is plainly satisfied. *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *17 (M.D. Ala. Mar. 17, 2017) ("[T]he Eleventh Circuit has given its blessing to a rule of thumb: A class of more than forty generally passes muster, and a class of less than twenty-one generally does not.") (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)) (Class redefined on other grounds at *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 140594, at *4 (M.D. Ala. Aug. 31, 2017)).

### 2.   *The Class Meets Rule 23(a)(2)'s Commonality Requirement*

Next, Rule 23(a) requires "questions of law or fact common to the class." FED. R. CIV. P.

23(a)(2). Rule 23(a)(2) "does not require that *all* of the questions of law or fact raised by the case

be common to all the plaintiffs," *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla.

1996), but "a class action must involve issues that are susceptible to classwide proof." *Cooper v.

Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004). In other words, class members' claims must

depend on a common contention that is "of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011).

"The threshold for commonality is not high." *In re Recoton Corp*, 248 F.R.D. 606, 618

(M.D. Fla. 2006) (*quoting Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)).

Rather, the requirement is met where there is "at least one issue affecting all or a significant

number of proposed class members." *Fabricant,* 202 F.R.D. at 313. To satisfy commonality, there

need only be a single common question capable of being answered on a class-wide basis whose

resolution is central to the validity of each claim. *See Dukes*, 131 S. Ct. at 2551; *Williams v.

Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

The commonality requirement is readily met in cases such as this one, because Plaintiffs'

and the Class members' claims depend on common questions that require common answers,

namely: 1) whether Wendy's owed a duty to and/or had an implied contract with its customers to

adequately protect their personal and financial information; and 2) whether Wendy's breached its

duties and/or its implied contract. Because common issues, including the adequacy of Wendy's

systems in reasonably safeguarding customers' data, underlie all class members' claims, and

Plaintiffs allege that Wendy's course of conduct caused all class members to be harmed, the commonality requirement is satisfied.

Indeed, this case presents numerous common questions of law and fact that will dictate Wendy's liability to all Class members alike. For example, Plaintiffs' negligence claims are based on Wendy's failure to secure customer Data, and will turn factually on whether Wendy's owed a duty to consumers with respect to securing payment card data, the actions Wendy's did or did not take to secure consumer Data, and whether that conduct (or lack thereof) enabled the Data Breach to occur. Plaintiffs' breach of implied contract claims will involve common issues of law and fact regarding whether Plaintiffs' and Class Members' purchases at Wendy's resulted in an implied contract under which Wendy's agreed to safeguard and protect the Data of Plaintiffs and Class members, and to timely and accurately notify them if such information was compromised or stolen, and whether Wendy's breached that contract. Likewise, each of the state law consumer claims involves common questions of law and fact, including, for example, whether Wendy's omitted material facts regarding the financial transactions, particularly the security thereof, between Wendy's and its customers; whether class members were harmed by the theft of their Data and the consequences of that theft; and whether class members are entitled to injunctive relief and the recovery of damages.

The trial of this case will focus on Wendy's conduct and policies. Wendy's implementation, or lack of implementation, of adequate security measures for its payment systems impacted all Class members. Proof concerning the adequacy of Wendy's payment and security systems is therefore common to all class members. The requisite commonality exists here because the issues raised by the class members' claims have common answers that will drive the resolution of the case: whether Wendy's was obliged to protect the security of its customers' payment card

information, and if so, whether the security measures Wendy's took were adequate. Accordingly, Plaintiffs and the proposed Class easily meet the low-threshold requirements of commonality. *E.g.*, *Smith*, 2017 U.S. Dist. LEXIS 38574, at *21 (finding commonality in data breach case alleging, among other claims, breach of implied contract and negligence, because the claims arose from common facts, i.e., the data breach and the relationship between the defendant and the putative class members). *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) ("The common factual question in this case is what actions [defendant] took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information. . . . [T]he answers to questions about [defendant]'s alleged misconduct and the harm it caused would be common as to all of the class members . . . .") (internal citations and quotations omitted); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *16-17 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in [defendant's] databases at the time of the data breach. [Plaintiffs] assert several common questions of law and fact relating to that breach: whether [defendant] acted negligently in collecting and storing [Class Members'] Private Information *. . . ;* whether Representative Plaintiffs and other members of the . . . Class have sustained damages, and, if so, the proper measure of those damages . . . The Court agrees with . .  Plaintiffs that above-listed common questions of law and fact exist, and resolution of these questions would [advance] the litigation in this case. Therefore, the Court finds that the Rule 23(a)(2) requirement is met.").

### 3. *Plaintiffs' Claims Meet Rule 23(a)(3)'s Typicality Requirement*

Typicality requires that Plaintiffs' claims be typical of those of the other class members. FED. R. CIV. P. 23(a)(3). In general, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1357

(11th Cir. 2009). "Like the commonality requirement, the typicality requirement is permissive: representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 674. The typicality requirement is "not demanding," *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325-26 (N.D. Ga. 2007); *In re Disposable Contact Lens Anti. Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class, *see, e.g.*, *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The purpose of the typicality requirement is to ensure that "the named plaintiffs have incentives that align with those of absent class members to assure that the absentees' interests will be fairly represented." *Prado-Steiman* , 221 F.3d at 1279. Thus, the typicality requirement is met where, in proving his or her own case, "the representative plaintiff [also] establishes the elements needed to prove the class members' case…." *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 683 (S.D. Fla. 2008). Damages, however, may vary from one class member to the next. *See Kornberg*, 741 F.2d at 1337 (holding that disparate damages claims did not make a class atypical).

Plaintiffs meet this requirement because both they and the proposed Class members were subject to Defendant's common course of conduct. The Class consists of thousands of consumers whose payment card accounts, like Plaintiffs', were compromised by Wendy's in the Breach. Plaintiffs experienced typical harm and typical damages. They became victims of the Data Breach after cards on their accounts were used to make a purchase at Wendy's during the time of the Breach. They became victims of the Data Breach as a result of the same security failures, on the same systems, that allowed the same malware to expose their Data.

The named Plaintiffs, like each member of the class, will use common evidence to establish their claims, for example, to show that Wendy's owed a duty to protect the Data it collected, that its conduct caused or allowed the Breach, that the Breach affected their payment cards, and that they were harmed as a result. *See, e.g.*, *Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (finding typicality where "the state-law claims that the Consumer Plaintiffs assert in this case—negligence, breach of contract, and violations of state consumer-protection laws—are recognized in some form in all jurisdictions and therefore available for all [class members.] . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct by [defendant] and a single set of legal theories.") (citations and internal quotation omitted).

Typicality is thus satisfied. *Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *18-19 (". . . Plaintiffs assert that the typicality requirement is met because all class members had their private information compromised, and their claims arise from the same course of uniform conduct of [defendant]. The Court agrees . . . . The proposed class members were all in a position whereby [defendant] may have negligently handled their private information. Thus, there is a sufficient relationship between the injuries to the Representative Class Members, and the conduct which affects the entire class. The claims of the Representative Class Members are typical of those that would be brought by all class members, and Rule 23(a)(3) is satisfied.").

### 4.   *Plaintiffs Meet Rule 23(a)(4)'s Adequacy of Representation Requirement*

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This "adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.,* 513 F.3d

1314, 1323 (11th Cir. 2008). "Adequacy of representation is presumed unless there is evidence to the contrary." *Brown v. SCI Funeral Servs. of Florida, Inc,* 212 F.R.D. 602, 605 (S.D. Fla. 2003).

There is nothing that suggests Plaintiffs have interests contrary to those of the Class. Rather, Plaintiffs and the rest of the proposed class will all benefit if Plaintiffs successfully prove their claims. Plaintiffs' claims stem from a single course of conduct by Wendy's, are based upon the same legal theories, and seek to recover similar damages for Wendy's legal violations. Plaintiffs are committed to seeking a remedy on behalf of the Class for the allegations contained in the Complaint. They have actively participated in the litigation of this matter, conferring on numerous occasions with counsel, responding to interrogatories, reviewing and commenting on court filings, producing documents, and appearing for their depositions.[6] At this stage of the litigation, there should be no reason to doubt that Plaintiffs are adequate representatives for the class and will continue protecting class members' interests at trial. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM), 2017 U.S. Dist. LEXIS 75455, at *21 (D. Minn. May 17, 2017) (finding adequacy in a data breach case such as this one: "This class suffered the same injury—theft of personal financial information—and the same risk of future injury. The only difference among class members is in the quantifiable damages suffered, not in the underlying injury.")

Likewise, Plaintiffs have retained and overseen counsel who have extensive experience prosecuting complex class actions, including data breach class actions such as this one.[7] Plaintiffs' counsel have devoted substantial time and resources to the case by, for example, opposing Defendant's motions to dismiss the case (ECF No. 35, 79); opposing Defendant's motions to stay

---

[6]Exhibit C, Yanchunis Decl., Ex. 2; Declarations of C. Jackson; D. Jackson; G. Thomas; A. McConnell.

[7]Id., Ex. 1; Firm Bios of proposed Class Counsel.

discovery (ECF No. 43, 86), defending depositions of named Plaintiffs; uncovering key internal documents through discovery that have advanced the Class's claims against Defendant; deposing a 30(b)(6) corporate representative of Defendant; and opposing Defendant's Motion for Summary Judgment (ECF No. 118).[8] The adequacy requirement is thus satisfied.

### D.  The Proposed Class Satisfies Rule 23(b)

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied. Here, Plaintiffs seek certification of the proposed Class under Rule 23(b)(2) for injunctive relief pursuant to state consumer protection laws and (b)(3) for monetary damages.

### 1.  *Rule 23(b)(2): Injunctive Relief is Appropriate*

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate...." FED. R. CIV. P. 23(b)(2); *see also Heffner v. Blue Cross & Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1344 (11th Cir. 2006). "The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class is encompassed in the commonality requirement of Rule 23(a)." *Diaz v. Hillsborough County Hosp. Auth.,* 165 F.R.D. 689, 695 (M.D. Fla. 1996). Thus, where a court finds that Rule 23(a)'s commonality requirement is met, the court should typically also find that the defendant acted on grounds generally applicable to the class as a whole. *Id.*

Indeed, Defendant acted on grounds generally applicable to Plaintiffs and the Class. Defendant's conduct did not vary significantly from class member to class member. Wendy's security failures led to the Data Breach that exposed all class members' Data. Final injunctive

---

[8] *Id.*

relief is necessary to protect Plaintiffs and the Class from such conduct in the future, and to protect their Data to the extent it is still in Wendy's possession. Thus, the requirements of Rule 23(b)(2) are met.

### 2. *Rule 23(b)(3): Common Question of Law and/or Fact Predominate*

Plaintiffs also seek certification of the Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), a plaintiff must show that (i) questions of law or fact common to the proposed class members predominate over questions affecting only individual members, and (ii) the class mechanism is a superior method for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3); *Klay*, 382 F.3d at 1251.

When considering the element of predominance, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254. The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004); *see Dukes*, 131 S. Ct. at 2551-57. Thus, "[c]ommon issues of fact and law" predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255.

The predominance inquiry "begins, of course with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Plaintiffs are not required to prove every element of their claims is susceptible to class-wide proof. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013). Rather, the Court should assess each element and determine whether those issues that are subject to "generalized proof"

predominate over those issues that are subject only to individualized proof. *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000).

Minor individualized issues do not defeat predominance where the common issues are at the crux of the action to be certified. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000). As the Supreme Court has explained:

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (citations omitted); *see also Klay v. Humana*, Inc., 382 F.3d 1241at 1259 (11th Cir. 2004) (individualized damages do not preclude class certification).

Nevertheless, it is expected that Wendy's will argue that proof of damages for the Class is so individualized that predominance cannot be satisfied. Numerous courts have held that "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003) (affirming class certification); *see also In County of Monroe, Florida v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010) (common questions predominate where "the defendant's conduct is the same as to all members of the putative class").

Common questions predominate when individual damage questions will not overwhelm the litigation. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016). Even if damages must be calculated individually, that "is no impediment to class certification." *Klay*, 382 F.3d at 1260; *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well

nigh universal"); *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 306 (3d Cir. 2005) (citation omitted) ("[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individual damage issues.'").

The most important liability questions in this case have common answers. What matters for purposes of class certification is not whether this Court or a jury will ultimately agree that Wendy's security was inadequate, but whether all Class members' claims will rise or fall together. *Amgen Inc.*, 133 S. Ct. at 1191, 1194. The answer to that is yes: either Wendy's security was adequate or it was not; either Wendy's owed a duty—whether in tort or as a result of an implied contract—to provide sufficient payment card security, or it did not; either Wendy's failed and/or breached that duty—or it did not.

The same proof is available to, and will be relied upon by, each Class Member in proving her or his individual claims, and such issues will predominate the litigation. Plaintiffs will rely upon common, class-wide evidence to establish each element of their claims against Wendy's for breach of implied contract, negligence, and each of the state consumer statutes. *Supra,* §III.C.2 (regarding commonality). The focus is on Defendant's conduct and not on matters pertaining to individual Class members. *See, e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *12 (M.D. Pa. Nov. 19, 2007) ("'[c]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members'") (citation omitted). Thus, common issues predominate. *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015) ("Here, the common factual and legal questions presented are: (a) whether [defendant] failed to protect its users' PII with industry-standard protocols and technologies; (b) whether the allegedly false promises [defendant] made in

its privacy policies are material; and (c) whether the security representations contained in [defendant's] privacy policy, in light of the actual state of [defendant's] security practices, constitute a violation of the UCL. . . . These common questions can be resolved for all members of the proposed class in a single adjudication, and are the central focus of this class action. Accordingly, the Court finds the predominance requirement satisfied."); *Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *26-28 ("Whether [defendant's] conduct (before and during the theft of Plaintiffs' private information) violated the various laws alleged in the Complaints is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members. Without a determination on this common question, there would be no recovery for any of the class members. . . . Although there are variations in the damages claims of each class member and their appropriate amounts of recovery, these issues are predominated by the main issue of fault.")

### a.  The Claims of the Class are Subject to "Generalized Proof."

The two key issues in a breach of implied contract claim are whether an implied contract exists and whether that contract was breached. Both of these factors can be determined on a class-wide basis, without recourse to individual evidence. The implied contract is one between Wendy's and all customers who provided Wendy's with a payment card, and the breach occurred in connection with the company-level failures that led to the Data Breach. *Smith*, 2017 U.S. Dist. LEXIS 38574, at *33-34 ("[B]ecause the relationship and disclosure elements are the key points of contention, resolution of the common elements will so advance the litigation that they may fairly be said to predominate. The implied-contract claim therefore passes the predominance criterion.") (internal citations and quotations omitted) (Predominance finding affirmed on reconsideration,

*Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 140594, at *4 (M.D. Ala. Aug. 31, 2017)).

Similarly, to recover on their negligence claim, Plaintiffs and Class members must establish Wendy's had a duty to protect its customers' payment card data and breached that duty. Duty and breach are common issues susceptible to proof on a class-wide basis. Numerous courts that have held that certification of a negligence claim is appropriate where, as here, the negligent act and resulting damages arise from a common set of operative facts. *See, e.g.*, *Mullen v. Treasure Chest Casino,*186 F.3d 620, 626 (5th Cir. 1999) (affirming decision where "district court held that the issues to be tried commonly—seamen status, vessel status, negligence, and seaworthiness— were significant in relation to the individual issues of causation, damages, and contributory negligence"); *In re: Tri-State Crematory Litigation*, 215 F.R.D. 660, 694-97 (N.D. Ga. 2003) (granting issue certification in a negligence class action). A negligence claim in a data breach action like this one is particularly suited to certification. *See Smith*, 2017 U.S. Dist. LEXIS 38574, at *37 ("The questions of duty and breach—like the questions of the existence and breach of a contract—are common issues susceptible to proof on a class-wide basis.").[9] Moreover, Plaintiffs will be able to prove damages for all Class members using common evidence and common damages formulae—further demonstrating that common issues predominate throughout this case.

    a.   The State Consumer Protection Claims are Subject to "Generalized Proof."

The Complaint alleges that Defendant violated Section 349 of New York's General Business Law ("Section 349"), the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-

---

[9] Plaintiffs and Class members must also show causation and damages for their implied contract and negligence claims, but such questions, even if individualized, do not derail the predominance of the common questions. *Smith v. Triad of Ala*., LLC, 2017 U.S. Dist. LEXIS 38574, *43 (addressing in detail the policy behind certifying a data breach class alleging breach of implied contract and negligence).

18-104(a) ("TCPA"), and the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-2, *et seq*.

Section 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York state. "To maintain a cause of action under [Section] 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (citations omitted). The New York Court of Appeals has established an "objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances.'" *Id.*

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The Act defines "trade," "commerce," or "consumer transaction" as the "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47-18-103(11). To assert a claim pursuant to the TCPA, the plaintiff must establish that the defendant engaged in tortious conduct and that the plaintiff was exposed/subject to the tortious conduct. *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 815 (W.D. Tenn. 2005) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999)).

The CFA prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. § 56:8-2, et seq. "Merchandise" is

defined to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. § 56:8-1.

The Court should certify a subclass for each of the states as resolution of these consumer protection claims will focus entirely on Wendy's conduct, and will yield a common result for each class member. Each element of these claims poses common questions that can be answered for the entire class through generalized evidence, establishing both predominance and manageability.

First, common evidence will be adduced that Wendy's is a fast-food chain engaged in offering food products for sale to consumers, for which payment can be made by payment card. Accordingly, common evidence will establish that Wendy's conduct is "consumer oriented."

Second, Plaintiffs will use common evidence to demonstrate that Wendy's engaged in misleading and deceptive conduct by, *inter alia*, failing to adequately secure the customer data of the members of the Class; failing to maintain adequate computer systems and data security practices to safeguard customers' personal and financial information; failing to disclose that its data security practices were inadequate; and delaying in disclosing the full scope and extent of the Data Breach. That common evidence will include Wendy's own admissions that unauthorized third parties accessed Wendy's POS systems using malware, exposing the Data of potentially millions of customers.

Third, common, class-wide evidence will establish that Defendant's conduct exposed the Data of every member of the Class to unauthorized third parties. Common evidence will demonstrate that consumers paid for their Wendy's purchase using a payment card at a Wendy's POS system; common evidence will demonstrate that data included on the payment card was retained in the POS system; and common evidence will demonstrate that the payment card data retained on the POS system was accessed by a third-party. Accordingly, generalized proof will

establish that each state consumer Class member was injured by Defendant's conduct.

### 3. *Rule 23(b)(3): A Class Action is Superior to Other Methods of Adjudicating the Controversy*

The second prong of Rule 23(b)(3) requires the Court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) identifies various factors as pertinent to a superiority finding, including class members' interests in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action. FED. R. CIV. P. 23(b)(3)(A-D); *see also Amchem*, 521 U.S. at 615 (noting that the superiority requirement ensures that resolution by a class action will "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'") (citation omitted). "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (*quoting Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are particularly appropriate where, as here, "it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 700 (internal citations omitted); *Amchem*, 521 U.S. 591, 615 (1997) (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights"). A district court has "broad discretion" in determining whether class treatment is superior. *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210 (9th Cir.1975).

Here, the number of class members "is too large for the prosecution of separate actions by each class member to be likely, practical, or desirable." *Sanchez-Knutson*, 310 F.R.D. at 541. It is

simply not realistic for most consumers to file and prosecute individual lawsuits, and the required investment of time and financial resources would likely outweigh the potential recovery of any individual consumer. Furthermore, this case will not present manageability problems that defeat class certification. *Id.* at 541. There is little variation between state claims and significant overlap between the common evidence used to prove both the state and common law claims.

### E. In Addition, or Alternatively, Issue Certification Under Rule 23(c)(4) Is Appropriate to Determine Wendy's Liability.

If the Court should determine that this case is not amenable to certification under Rule 23(b)(3), Plaintiffs request the Court certify each of the common issues enumerated above in Section III.C.2. under Rule 23(c)(4). Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *Hirsch v. Jupiter Golf Club LLC*, No. 13-80456-CIV, 2015 U.S. Dist. LEXIS 62719, at *5 (S.D. Fla. May 12, 2015); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 317 (S.D. Fla. 2001). The certification of "issues classes" can drive the litigation forward even if individual issues remain for the Class members. *See, e.g.*, *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696–97 (N.D. Ga. 2003) (court concluded that "certain negligence issues are appropriate for class treatment"). Rule 23(c)(4) can be used to certify specific questions, even where the case as a whole does not otherwise satisfy the Rule 23(b)(3) predominance element. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

The challenges to Defendant's practices, which are common to every member of the Class, fit squarely within this analysis making issue certification under Rule 23(c)(4) appropriate. Judicial

efficiency will not be served by requiring scores of individual consumers to separately prove these common issues in individualized trials. Class judgment will have the preclusive effect of eliminating inefficient serial litigation of these common issues. Judgment in Defendant's favor would resolve the issue in one fell swoop, binding the entire class. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (noting that where a defendant has classwide defenses, class adjudication is "a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment"). Judgment in Plaintiff's favor on those issues resolves them for all subsequent litigation, which would instead focus on damages of the individual plaintiffs and any asserted individual defenses.

### F.  Appointment of Class Counsel

Rule 23 enumerates the factors that the courts should consider when appointing counsel for a certified class: (i) counsel's work in identifying or investigating the potential claims; (ii) counsel's experience in handling complex class actions; (iii) counsel's knowledge of the applicable law; and, (iv) the resources that counsel will bring to bear in representing the class. FED. R. CIV. P. 23(g)(1)(A). Additionally, courts may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).  Plaintiffs propose the appointment of John Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Counsel, and the appointment of Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC; Patrick Barthle of Morgan & Morgan Complex Litigation Group; Ariana Tadler, Charles Slidders, and Melissa Clark of Milberg LLP; John Emerson and David Scott of Emerson Scott, LLP; and, Jeremy Glapion of Glapion Law Firm as Class Counsel. These attorneys have decades of experience leading and managing class actions and complex litigation like this, extensive knowledge of the applicable case law, and sufficient resources to commit to the class. The attorneys proposed by Plaintiffs to be appointed as Class Counsel are qualified, experienced, and

able to conduct the litigation. They have invested considerable time and resources into the investigation and the prosecution of this action.

### G.  Proposed Plan for Providing Notice to The Class.

Rule 23 requires notice of a certified class that must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Pursuant to M.D. Fla. R. 4.04(b), Plaintiffs submit that notice to the class could be delivered by a nationally-recognized class action settlement administrator using direct notice through first-class mail. Although discovery is ongoing, Plaintiffs believe that sufficient information exists in Defendant's business records to determine the payment cards used at Wendy's during the Data Breach Period and information may be gathered from issuing banks to determine contact information for the credit card accounts identified. Alternatively, a publication notice plan can be developed by a nationally recognized class action settlement administrator using a combination of print media and internet media that will ensure notice reaches a percentage of the settlement class sufficient for court approval.

### IV.    CONCLUSION

Plaintiffs request an order granting Plaintiffs Motion for Class Certification.[10]

Dated: December 15, 2017                    By: s/ John A. Yanchunis

***ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS***

JOHN A. YANCHUNIS                    JEAN SUTTON MARTIN
PATRICK A. BARTHLE                   **LAW OFFICE OF JEAN SUTTON**
**MORGAN & MORGAN COMPLEX**           **MARTIN PLLC**
**LITIGATION GROUP**                  2018 Eastwood Road Suite 225
201 N Franklin St, 7th Floor          Wilmington, NC 28403
Tampa, Florida 33602                  Telephone: (910) 292-6676
Telephone: 813-275-5272               Facsimile: (888) 316-3489
Facsimile: 813-226-5402               Email: jean@jsmlawoffice.com

---

[10] Alternatively, Plaintiffs request that the Court grant certification under 23(c)(4). Plaintiffs respectfully reserve the right to amend the class definitions prior to conclusion of this matter, subject to Court approval. *See* FRCP 23(c)(1)(C).

Email: jyanchunis@forthepeople.com
pbarthle@forthepeople.com

ARIANA TADLER
*Admitted Pro Hac Vice*
CHARLES SLIDDERS
*Admitted Pro Hac Vice*
MELISSA CLARK
*Admitted Pro Hac Vice*
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
Email: atadler@milberg.com
cslidders@milberg.com
mclark@milberg.com

JOHN G. EMERSON
**EMERSON SCOTT, LLP**
830 Apollo Lane
Houston, TX 77058
Tel.: (281) 488-8854
Fax: (281) 488-8867
Email: jemerson@emersonfirm.com

DAVID G. SCOTT
**EMERSON SCOTT, LLP**
700 Rock Street
Little Rock, AR 72202
Tel.: (501) 907-2555
Fax: (501) 907-2556
Email: dscott@emersonfirm.com

JEREMY M. GLAPION
**GLAPION LAW FIRM**
1704 Maxwell Drive
Wall, NJ 07719
Tel.: (732) 455-9737
Email: jmg@glapionlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2017, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Jean Sutton Martin*
Jean Sutton Martin
Law Office of Jean Sutton Martin PLLC
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Facsimile: (888) 316-3489
Email: jean@jsmlawoffice.com