**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION**

| | | |
|---|---|---|
| JONATHAN TORRES, CHRISTINE JACKSON, DONALD JACKSON, ASHLEY MCCONNELL, ROXANNE GANT, and GERALD THOMAS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | **CASE NO.   6:16-cv-210-PGB-DAB** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WENDY'S INTERNATIONAL, LLC, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DEFENDANT WENDY'S INTERNATIONAL, LLC'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 3

    A.    The Data Theft ................................................................................. 4

        1.    The Variant A Malware ......................................................... 4

        2.    The Variant B Malware ......................................................... 5

III.  ARGUMENT AND CITATION TO AUTHORITY ..................................... 5

    A.    Plaintiffs Bear the Burden of Proving that the Class Certification Requirements Are Satisfied. .......................................................... 5

    B.    The Proposed Class Is Impermissibly Overbroad and Not Ascertainable. .................................................................................. 6

    C.    Plaintiffs Fail to Satisfy Rule 23(b)(3)'s Requirements. ................. 9

        1.    Plaintiffs Fail to Establish Predominance. ............................ 9

            a.    Individualized Liability Issues Preclude Class Certification. ................................................................ 10

                i.    Individualized Evidence Is Required to Prove Exposure to the Malware. ........................... 12

                ii.   Individualized Inquiry Is Required to Determine Injury and Causation. .................................. 13

                      1.    Individualized Evidence Is Required to Prove Injury. .................................................... 14

                      2.    Individualized Evidence Is Required to Prove Causation. .............................................. 16

                iii.  Breach of Implied Contract Requires Individualized Analysis. ................................... 19

            b.    Variations in State Law Preclude Certification of Plaintiffs' Proposed Nationwide Class. ................... 20

     i.  Plaintiffs' Failure to Perform the Required
       "Extensive Analysis" Precludes Certification of
       a Nationwide Class. ................................................... 21

     ii.  State Laws Vary Materially and Irreconcilably. ......... 22

       1.  State Negligence Law Varies Materially
         and Irreconcilably. ......................................... 23

       2.  State Law of Implied Contract Varies
         Materially and Irreconcilably......................... 26

     iii.  Due Process Precludes Certification of a
       Nationwide Class. ...................................................... 28

    c.  Individualized Damages Issues Preclude Class
      Certification. .......................................................................... 29

   2.  Plaintiffs Have Not Established Superiority. ...................................... 32

  D.  Rule 23(b)(2) Certification Is Improper.......................................................... 33

  E.  Issue Certification under Rule 23(c)(4) Is Not Warranted.............................. 34

  F.  Plaintiffs' Motion Should Be Denied in Its Entirety Because Typicality
    Is Lacking....................................................................................................... 39

IV. CONCLUSION................................................................................................................ 40

## I.     INTRODUCTION

Plaintiffs' claims arise out of criminal cyberattacks perpetuated not on Defendant Wendy's International, LLC's ("Wendy's"), but on certain of its independently owned and operated franchisees (the "Data Theft"). Plaintiffs' Motion for Class Certification, ECF 121 ("Motion") must be denied because Plaintiffs fall far short of carrying their burden of proving that Rule 23's requirements are satisfied here. Most fundamentally, Plaintiffs have not demonstrated that common proof could be used to prove their claims on a classwide basis – a mandatory prerequisite and a failing that in and of itself requires the denial of Plaintiffs' Motion. This failure is particularly glaring – and problematic – for Plaintiffs because their pleadings in opposition to summary judgment make plain that each named Plaintiff asserts a fact-intensive and highly individualized theory of liability and damages.

Undeterred, Plaintiffs ask this Court to overlook their shortcomings and certify a sprawling nationwide class that encompasses countless individuals whose payment cards were not even involved in the Data Theft. They also seek certification of three state subclasses on their statutory consumer protection claims. Square pegs do not fit into round holes, and Plaintiffs' Motion should be denied.

***First***, Plaintiffs' Motion should be denied for the threshold reason that Plaintiffs' proposed class definitions are fundamentally flawed. Plaintiffs bear the burden of properly defining their proposed classes, and in the Eleventh Circuit, class certification should be denied when the proposed class definition includes many individuals who have no claim. That is precisely the case here where Plaintiffs' proposed classes likely include ***millions*** of individuals who could not conceivably have been injured by the Data Theft because their payment card

1

information was not compromised in the Data Theft.  Plaintiffs' hopelessly overbroad class definitions require denial of their Motion.

***Second***, Plaintiffs have not carried their burden of satisfying Rule 23(b)(3)'s commonality and predominance requirements.  Plaintiffs have not even attempted to detail how their claims could be proven on a classwide basis using common evidence.  That is because they cannot.  The record evidence demonstrates that the Court would be required to engage in thousands, if not millions, of mini-trials to answer the core liability and damages questions such as:

1) whether each putative class member used a payment card at a franchisee restaurant infected by the malware at a time when the malware was installed on that restaurant's point of sale ("POS") system,

2) whether each putative class member suffered a legally cognizable injury,

3) whether any such injury was *caused* by the Data Theft as opposed to myriad alternative causes, and

4) the appropriate amount of damages for each class member, if any, taking into account all of the individual facts and circumstances.

Plaintiffs' request for certification of a nationwide class on their common law claims requires additional layers of individualized inquiry.  Plaintiffs bear the burden of demonstrating through extensive analysis that there are no material variations among the fifty states' laws implicated by their claims.  Plaintiffs turn a blind eye to this burden in their Motion, failing to even mention choice of law or to address the numerous variations that exist.

***Third***, Plaintiffs' half-hearted request for class certification under Rule 23(b)(2) certification must fail.  Under Supreme Court precedent, class certification under Rule 23(b)(2) is not available because monetary relief is the focus of the Second Amended Class Action Complaint, ECF 102 ("Complaint" or "Compl."), and Plaintiffs have conceded there is no risk of future harm.

***Fourth***, the Court should deny Plaintiffs' alternative request to certify issue classes because the issues that Plaintiffs identify are fraught with the same individualized issues that preclude Plaintiffs from meeting their burden of demonstrating commonality and predominance.  The Middle District of Florida and other courts in the Eleventh Circuit have consistently rejected similar attempts to use issue certification to make an end run around Rule 23's requirements.

***Finally***, as set forth in detail below, Plaintiffs fail to satisfy Rule 23(a)'s requirement of typicality.  This alone dooms Plaintiffs' Motion in its entirety.

For these reasons and those below, Plaintiffs' Motion should be denied.

## II.      BACKGROUND

Wendy's subsidiary, Quality is Our Recipe, LLC, is the franchisor of the Wendy's restaurant system.  *See* Ex. A, Declaration of Gavin Waugh ("Waugh Decl."), ¶ 4; Waugh Decl., Ex. 1, Excerpts of Form 10-K for the 2016 Fiscal Year ("2016 FY 10-K") at 3.  The Wendy's restaurant system is the world's third largest quick-service restaurant company in the hamburger and sandwich segment.  *See* Waugh Decl. ¶ 5; 2016 FY 10-K at 6.  The overwhelming majority of the approximately 6,500 restaurants in the Wendy's restaurant system are independently owned and operated by franchisees ("Franchisee Restaurants")

3

located in all fifty states.  *See* Waugh Decl. ¶ 6; 2016 FY 10-K at 5-6, 9; Waugh Decl., Ex. 2, Excerpts of Form 10-K for the 2015 Fiscal Year ("2015 FY 10-K") at 5-6, 9.  Indeed, as of today approximately 6,200 of the restaurants are owned and operated by franchisees and only approximately 330 are owned and operated indirectly by Wendy's ("Company Restaurants"). *See* Waugh Decl. ¶ 6; 2016 FY 10-K at 6.

At the time of the Data Theft, there was no common POS system used across the Wendy's restaurant system to accept customers' credit and debit card payments.  *See* Waugh Decl. ¶ 7.  Wendy's Company Restaurants utilized the Aloha POS system, a product of NCR Corporation, to accept credit and debit card payments from customers.  *See id.*  Franchisee Restaurants utilized a number of third-party POS systems, such as the Aloha POS system and the Wand POS system, a product of the Wand Corporation.  *See id.*

## A.  The Data Theft

### 1.  *The Variant A Malware*

In February 2016, Wendy's first reported that unusual payment card activity had affected some Franchisee Restaurants and that malware had been discovered on certain systems.  *See* 2016 FY 10-K at 21.  The malware – referred to as Variant A – only impacted some Franchisee Restaurants that were using the Wand POS system and were receiving support from the Wand Corporation.  *See* Waugh Decl. ¶ 8.  The attackers gained access to these Franchisee Restaurants' POS systems using the compromised credentials of a Wand Corporation employee.  *See id*.  With those compromised credentials, the attackers connected remotely to a number of Franchisee Restaurants' POS systems and installed Variant A.  *See id.*  The earliest date a Franchisee Restaurant was infected with the Variant A malware was

October 25, 2015.  *See id.* ¶ 11.  The Variant A malware was disabled or removed from all but two Franchisee Restaurants by February 14, 2016.  *See id.*  The malware was disabled or removed from the final two Franchisee Restaurants by March 10, 2016.  *See id.*

### 2.   The Variant B Malware

On November 30, 2015, criminal attackers began surreptitiously installing an additional malware variant – referred to as Variant B.  *See* Waugh Decl. ¶ 12.  Rather than targeting Franchisee Restaurants operating the Wand POS system, Variant B impacted only certain Franchisee Restaurants that operated the Aloha POS system and that had contracted with one particular POS support provider, third-party Dumac Business Systems, Inc. ("Dumac").  *See* Waugh Decl. ¶ 9.  This time, the attackers utilized compromised credentials of Dumac employees to access these Franchisee Restaurants' POS systems using a remote access tool and install Variant B.  *See id.*  On June 9, 2016, Wendy's reported that Variant B had been identified and disabled.  *See* 2016 FY 10-K at 21.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.  Plaintiffs Bear the Burden of Proving that the Class Certification Requirements Are Satisfied.

Plaintiffs fundamentally misstate the standard for class certification.  Importantly, there is no presumption in favor of class certification.  *See* Motion at 5.  To the contrary, the Eleventh Circuit has made clear that there is a presumption *against* "class certification because class actions are an exception to our constitutional tradition of individual litigation."  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  To overcome this presumption *against* class certification, Plaintiffs must prove – not merely plead – compliance with Rule 23(a)'s numerosity,

commonality, typicality, and adequacy of representation requirements. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); *Electrolux*, 817 F.3d at 1234.   In addition, because Plaintiffs move to certify classes under Rules 23(b)(3), 23(b)(2), and 23(c)(4), Plaintiffs must also prove that they satisfy the requirements of those provisions.

The Court must conduct a "rigorous analysis" to determine whether Plaintiffs have carried their burden. *See Electrolux*, 817 F.3d at 1234 (citing *Dukes*, 564 U.S. at 351).   The Court should consider the merits to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).   That is, if a question of fact or law is relevant to that determination, the Court has a duty to decide the issue of fact or law, rather than merely accept it as true or construe it in anyone's favor. *See Comcast*, 569 U.S. at 34.   Class certification should be denied if there are any doubts as to whether Plaintiffs have met their burden. *See Electrolux*, 817 F.3d at 1233 (internal quotation and citation omitted).

**B. The Proposed Class Is Impermissibly Overbroad and Not Ascertainable.**

In addition to Rule 23's requirements, Plaintiffs bear the burden of establishing that the proposed class is adequately defined and clearly ascertainable. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2002).   Class definitions that are overbroad or include many individuals who have no claim should be rejected. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where class definition "impermissibly include[d] members who have no cause of action"); *Varnes v. Home Depot USA, Inc.*, No. 3:12cv-622, 2015 WL 5190648, at *3 (M.D. Fla. Sept. 4, 2015) (inclusion of putative class members who have suffered no damages and therefore have no

viable claim is "fatal to class certification"); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult.").

Plaintiffs' Motion should be denied because the proposed class definition sweeps in countless individuals who could not been harmed by the Data Theft. Plaintiffs have defined the class to include all customers who "made a credit or debit card purchase" at any restaurant affected by the Data Breach "from October 1, 2015 to June 9, 2016." Motion at 1. The problem is that there is a disconnect between the time the malware was actually in place and the time period Plaintiffs have used to define class membership. Franchisee Restaurants impacted only by Variant A were infected only from October 25, 2015 to February 14, 2016. Waugh Decl. ¶ 11.[1] Thus, the class period both predates the earliest date of infection and extends for several months after the malware had been removed or disabled, sweeping in countless individuals who used payment cards at times the malware was not operational and who could not conceivably recover on the claims. Likewise, the first date of infection for Variant B was November 30, 2015, but the class period begins almost two months *before* Variant B had been installed on any Franchisee Restaurant's POS system. *See* Waugh Decl. ¶ 12. The result is a bloated class that likely includes potentially *millions* of customers who could not have been harmed and thus could not have a viable claim. *See* Waugh Decl. ¶ 10. This enormous

---

[1] With the exception that the Variant A malware was disabled or removed from the final two Franchisees Restaurants by March 10, 2016. *See* Waugh Decl. ¶ 11.

overbreadth alone warrants denying Plaintiffs' Motion.  *See Walewski*, 502 F. App'x at 861; *Varnes*, 2015 WL 5190648, at \*3.

Plaintiffs have also failed to satisfy their burden of demonstrating that their proposed class is clearly ascertainable.  *Little*, 691 F.3d at 1304.  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x. 782, 787 (11th Cir. 2014) (internal citations omitted). These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquir[ies]."  *Id.* (citation omitted).

Plaintiffs have not come forward with any evidence identifying all consumers who used a payment card to make a purchase at a Wendy's location impacted by the Data Theft during the relevant time period.  Put simply, there is no class list or button that can be pushed to generate one.  Plaintiffs give short shrift to the issue of ascertainability, stating simply that "class members can be identified through account statements of the payment card they used at Wendy's during the period of the Data Breach."  Motion at 5.  This conclusory statement does not carry Plaintiffs' burden.  As a preliminary matter, it seems to require manual examination of each putative class member's account statement.  This is the antithesis of a "manageable process that does not require much if any individual inquir[ies]." *Bussey*, 562 F. App'x. at 787; *see Bouton v. Ocean Props., Ltd*, No. 16-cv-80502, 2017 WL 4413994, at \*9 (S.D. Fla. Sept. 27, 2017) (finding ascertainability not satisfied and denying class certification where "Plaintiff has not provided the Court with any feasible method to determine the identity of the class members without resorting to . . . individualized inquiry").  But even this cumbersome process

will not ascertain class membership. That is because not all Wendy's locations were affected by the Data Theft. Additional analysis would be required to determine whether the Wendy's location or locations where proposed class members used their payment cards were locations affected by the Data Theft. Moreover, it would then be necessary to determine whether the proposed class member used his or her payment card at a time the malware was operating on the affected location. This would also require individualized analysis because the dates of infection were not the same for all affected restaurants. *See* Waugh Decl. ¶¶ 11-13. Plaintiffs have not even attempted to propose a manageable, administratively feasible process for doing so. Plaintiffs' failure to come forward with proof that their proposed class is ascertainable is an independent basis that supports denying Plaintiffs' Motion.[2]

### C. Plaintiffs Fail to Satisfy Rule 23(b)(3)'s Requirements.

#### 1. Plaintiffs Fail to Establish Predominance.

To satisfy Rule 23(b)(3), Plaintiffs must establish, *inter alia*, that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 nn.3 & 4 (11th Cir. 2004). A question is "common" only if it is "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an

---

[2] In a footnote, Plaintiffs add that Wendy's has recently "suggested" that it can "ascertain the payment card numbers exposed to third parties as a result of the" Data Theft. Motion at 5 n.5. In the first place, Plaintiffs have had nearly two years to conduct discovery in this case – certainly adequate time to collect information to ascertain putative class members, to the extent possible. In any event, to carry their burden, Plaintiffs must demonstrate putative class members – not payment card numbers – are ascertainable, and Plaintiffs have not come forward with any administratively feasible means for tying account numbers to actual consumers. The identification of impacted account numbers is only one piece of the puzzle, and it does not carry Plaintiffs' burden of proving ascertainability.

9

issue that is central to the validity of each one of the claims in one stroke.'" *Shepherd v. Vintage Pharm., LLC*, 310 F.R.D. 691, 697 (N.D. Ga. 2015) (quoting *Dukes*, 564 U.S. at 350). "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quotation marks omitted).

To assess predominance, the Court must examine how Plaintiffs and the putative class members intend to prove liability and damages and whether the required evidence is common or individualized. *See Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). Class certification is inappropriate if, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points." *Klay*, 382 F.3d at 1255. Here, Plaintiffs fall far short of establishing predominance, and their Motion should be denied.

### a.  Individualized Liability Issues Preclude Class Certification.

Plaintiffs have failed to satisfy their burden of demonstrating that their claims are subject to common proof. *See id.* at 1264. Plaintiffs point to no common proof at all. Instead, they simply assert that the elements of their claims are susceptible to common proof. For instance, rather than identifying common proof that could be used to prove their negligence claims, Plaintiffs merely state that "[d]uty and breach are common issues susceptible to proof on a class wide-basis." Motion at 18.[3] But Plaintiffs have a burden of proof here, and that

---

[3] This tactic pervades Plaintiffs' Motion. Plaintiffs purport to identify the elements of their claims and assert that they can be resolved on a classwide basis, but they do not provide any specifics as to how that could be done – much less identify any actual common proof. *See* Motion at 14-21.

burden cannot be satisfied by Plaintiffs' bare assurance that the elements of their claims are susceptible to unspecified common proof. *See Klay*, 382 F.3d at 1264 (plaintiffs have the burden of showing "there exists generalized evidence which *proves* or *disproves* an *element* on a simultaneous, class-wide basis") (quoting in parenthetical) (emphasis added); *Electrolux*, 817 F.3d at 1234 ("The party seeking class certification has a burden of *proof*, not a burden of pleading. He 'must affirmatively demonstrate his compliance with Rule 23' by proving that the requirements are '*in fact*' satisfied.") (emphasis in original) (quoting *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350)). For these same reasons Plaintiffs are wrong that predominance is satisfied because "[t]he focus is on . . . [Wendy's] conduct and not matters pertaining to individual Class members." Motion at 16. In other words, Plaintiffs ask the Court to disregard the countless issues that exist with respect to individual putative class members and focus its attention on Wendy's conduct. But Plaintiffs' claims cannot be proven based on Wendy's conduct alone. Rather, the "matters pertaining to individual Class members" that Plaintiffs seek to disregard are central. *Id.* To establish liability each class member would need to prove – at a minimum – that he or she (1) used a payment card at a Franchisee Restaurant during the specific time period that specific restaurant's POS was infected with the malware, (2) suffered an injury, and (3) the injury was caused by the malware attack on that particular Franchisee Restaurant. There is no common proof capable of resolving any of these issues. The predominance requirement necessitates a weighing of individualized and common issues, and

Plaintiffs' claims here present individualized issues that far outweigh any common issues that may exist.[4]

     i. *Individualized Evidence Is Required to Prove Exposure to the Malware.*

To have a viable claim, each class member must first prove that he or she used a payment card at a Franchisee Restaurant during the time that specific restaurant's POS system was infected by the malware. This is a critical element of any putative class member's claim because there is no way the malware could have compromised a class member's payment card if the class member did not use the payment card at a restaurant at the time the malware was operational. Not all proposed class members will be able to prove this requirement. In fact, Mr. Jackson cannot prove this requirement because he does not even allege he used his payment card at a Wendy's restaurant. *See* Compl. ¶¶ 13-14. The proposed class sweeps in millions of individuals who used their payment cards at Franchisee Restaurants when the malware was *not* operating on their POS systems. *See* Section III(B), *supra*. Plaintiffs have not even attempted to come forward with any common evidence that could be used to separate class members who actually used their payment cards at an infected Franchisee Restaurant during the time of infection from the hundreds of thousands of class members who did not.

---

[4] As discussed in Section III(C)(1)(b), *infra*, Plaintiffs' request for certification of a nationwide class on their common law claims presents even more individualized issues given the substantial variations in governing state law that exist.

ii.     *Individualized Inquiry Is Required to Determine Injury and Causation.*

Putative class members would then need to show that they (1) suffered an injury that was (2) caused by the Data Theft.[5]  Plaintiffs fail to carry their burden of proving that either element could be proven through common evidence.  *See, e.g.*, Motion at 17-21.  As to injury, Plaintiffs claim that they "will be able to prove damages for all Class members using common evidence."  *Id.* at 18.  But they do not identify this supposed common evidence nor do they even attempt to explain how proving injury as to any Plaintiff proves injury as to every other putative class member.  Plaintiffs' failure to carry their burden is even more pronounced as to causation; they do not even argue that common proof exists to prove causation.  *See id.* at 18 n.9 (acknowledging possibility that causation requires individualized analysis).  Plaintiffs' failure to carry their burden of proving predominance requires denial of their Motion.  *See*

---

[5] Each of the claims in the Complaint requires some form of injury and causation.  *See* 65 Corpus Juris Secundum Negligence § 20 (negligence plaintiff must prove "that the loss or injury proximately resulted from the defendant's breach of the duty"); 17B Corpus Juris Secundum Contracts § 824 ("[P]roof of the damages resulting from a defendant's alleged breach of contract is a required element in a breach of contract claim . . . ."); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 63 (S.D.N.Y. 2006) ("To sustain a claim under [N.Y. Gen. Bus. Law] § 349, . . . the alleged deceptive act must be the cause of the harm asserted."); Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(1) (noting that the alleged loss must be "a result . . . of an unfair or deceptive act or practice"); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 791 (N.J. 2005) (New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, requires plaintiff to allege "an ascertainable loss [that is] a result of the unlawful conduct" (quotation marks omitted)).  Wendy's notes these requirements on a general level for the limited purpose of illustrating individualized fact issues.  A more granular analysis of state law reveals that the injury and causation requirements for Plaintiffs' common law claims themselves differ materially across the fifty states as explained below in Section III(C)(1)(b), *infra*.

*Klay*, 382 F.3d at 1264.  This is particularly so given that Plaintiffs' claims are inherently individualized for the reasons set forth below.

1.   Individualized Evidence Is Required to Prove Injury.

Plaintiffs do not allege one uniform injury incurred by each putative class member; they allege highly individualized, fact-intensive injuries that vary from class member to class member.  Each of Plaintiffs' claims requires proof of actual injury.  The Court cannot simply assume that all putative class members were injured by the Data Theft (especially given Plaintiffs' hopelessly broad class definitions).  The named Plaintiffs here demonstrate the highly individualized nature of the inquiry required, advancing fact-intensive theories of harm based on their own personal circumstances, not to mention the three former named Plaintiffs who voluntarily dismissed their claims.

Mr. Thomas's theory of harm lies in the fact that he refused his bank's request to cancel his payment card and thus was required to authenticate payment card transactions through what he calls a "burdensome" process until a new card could be issued.  Compl. ¶ 20.  Mr. Thomas claims that this inconvenience kept him from "fully participat[ing] in Arizona Bike Week events."  *See* ECF 114-10 at No. 9.  Even if this could constitute a legally cognizable injury (and it does not, *see* ECF 114), proving this set of facts with respect to Mr. Thomas does not prove that any other putative class member incurred a legally cognizable injury.  And Wendy's would have individualized defenses to Mr. Thomas's claims, for example, intervening/superseding cause, based on the unique nature of Mr. Thomas' claims.

The Jacksons and Mr. Thomas rely on theories of harm based on their supposed lost ability to make purchases that would have earned them reward points or cash back.  *See* Compl.

14

¶¶ 13-14, 19-21.  Again, a serious question exists as to whether this is a legally cognizable injury.  *See* ECF 114.  But even if it were, these theories do not prove an injury in fact to all of the many putative class members whose payment cards did not earn rewards points or cash back.  Likewise, the claim of the Jacksons and Gerald Thomas that they were injured because they were unable to make needed purchases does not apply to putative class members with access to other funds, be it from their own money or other payment cards, that allowed them to make the purchases they needed.  *See* Compl. ¶¶ 14, 19-21.

As these examples show, the Court would have to parse each proposed class member's individual evidence simply to establish the fact of injury.  This is the antithesis of a class action and only underscores Plaintiffs' failure to prove predominance.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (no predominance where "[s]ome class members suffer no physical injury . . . , while others suffer from" three different types of physical injuries (quotation marks omitted)); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000) (no predominance where "each plaintiff must demonstrate that he or she suffered" injury based on "highly case-specific factual issues" (quotation marks omitted)); *Faulk v. Home Oil Co.*, 186 F.R.D. 660, 664 (M.D. Ala. 1999) (denying class certification of an action requiring "individualized proof of actual injury").[6]

---

[6] Whether a class member has been injured overlaps with Wendy's pending Motion for Summary Judgment.  *See* ECF 114.  As set out in that Motion, the named Plaintiffs lack Article III standing because there is no evidence that they have suffered a concrete injury that is fairly traceable to Wendy's.  Plaintiffs' lack of Article III standing provides another independent basis for denying Plaintiffs' Motion.  Moreover, Plaintiffs have failed to identify common evidence capable of proving each putative class member suffered a legally cognizable injury sufficient to confer Article III standing, providing yet another reason for denying their Motion.

2.   Individualized Evidence Is Required to Prove Causation.

The element of causation – essential to all of Plaintiffs' claims – also requires individualized proof.  Plaintiffs and the proposed classes must prove that any injuries they claim to have incurred resulted from the Data Theft.  Again, causation cannot be inferred.  *See, e.g.*, *Hain v. Jamison*, 68 N.E.3d 1233, 1236-37 (N.Y. 2016) ("It . . . must be proved that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff." (quotation marks and brackets omitted))[7]; *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D. 3d 802, 803 (N.Y. App. Div. 2010) (elements of a breach of contract claim include "the defendant's breach of that contract, and *resulting* damages" (emphasis added)); *Harvey v. Ford Motor Credit Co.*, No. 03A01-9807-cv-00235, 1999 WL 486894, at *2 (Tenn. Ct. App. July 13, 1999) (to prove a claim under the Tennessee Consumer Protection Act, a plaintiff "must show that the defendant's conduct proximately caused the injury"); *Knapp v. Potamkin Motors Corp.*, 602 A.2d 302, 303 (N.J. Super. Ct. Law. Div. 1991) ("private person must be misled and damaged as a proximate result of a violation" of the New Jersey Consumer Fraud Act).

Causation cannot be inferred particularly because there were numerous other data breaches during the relevant period that could have caused proposed class members' injury.  For instance, plaintiffs in the Yahoo! data breach litigation allege that breaches in 2013 and 2014 affected three billion accounts and were not fully disclosed until late 2017.  *See* Ex. B,

---

[7] The "line between those intervening acts which sever the chain of causation and those which do not cannot be drawn with precision."  *Hain*, 68 N.E.3d at 1238.  Depending on "the nature of the case, a variety of factors may be relevant in assessing cause," requiring fact-intensive analysis of alternative and/or additional causes.  *Id.* (quotations and brackets omitted).

Declaration of Kristine M. Brown ("Brown Decl."), Ex. 1.  The Yahoo! plaintiffs allege the hackers gained access to, among other sensitive information, "financial communications and records containing credit cards, retail accounts, banking, account passwords, IRS documents, and social security numbers from transactions conducted by email, in addition to other confidential and sensitive information."  *Id.* ¶ 7.  Multiple retailers also reported payment card breaches that overlapped with the Data Theft.  *See id.* Ex. 2-3.  Indeed, Jonathan Torres, who has since dismissed his claims with prejudice, stated under oath in an affidavit that he believed his debit card – the same one he alleged was compromised by the Data Theft – "was cloned at a gas pump at 7-11 on Conroy Road in Orlando."  *See id.* Ex. 4.  This affidavit was dated just four days after the first allegedly fraudulent charge he sought to attribute to the Data Theft. *See id.*

Even if the Court could rule out the possibility that another data breach caused an individual's injury, further individualized evidence would be necessary to prove that the Data Theft caused that injury.  Plaintiffs' own evidence disproves their attempts to blame Wendy's for injuries they claim to have incurred:

- Ms. McConnell alleged that she was unable to purchase a tablet computer because her card was cancelled after the Data Theft.  *See* ECF 114-4 at 9.  But discovery revealed that she delayed her purchase not because of the Data Theft but because she was in the process of moving.  *See* ECF 114-5 at 85:7-87:9.

- Mr. Jackson *did not use* his payment card at a Wendy's restaurant yet contends he was injured when PayPal made the unilateral decision to cancel his card.  *See* ECF 120-2 at

17

23:17-20.  Thus, any injury Mr. Jackson claims to have incurred is a result of PayPal's actions, not Wendy's conduct.

- Ms. Jackson alleges, among other things, that because her PayPal debit card was cancelled, she was unable to make purchases she would have otherwise made.  Compl. ¶ 14.  Yet she testified that she declined to eat at a restaurant in one instance because she was upset she had just said goodbye to her son who recently graduated boot camp in the Army.  *See* ECF 114-6 at 43:2-44:3; 75:18-78:16.  Likewise, Ms. Jackson testified that she and her husband decided to end their vacation early not because their payment card had been compromised, but because she "was very upset" and experiencing "emotions because of [her] son."  *Id.* at 77:15-24.

- Although Mr. Thomas claims he could not make purchases because of the burdensome procedures imposed by his bank, Mr. Thomas admits that he successfully purchased cowboy boots (and the approval process took three minutes) and that he decided not to even attempt to make other purchases at issue.  *See, e.g.*, ECF 114-11 at 98:9-102:16, 117:4-9, 118:14-120:3, 121:23-122:6.

Examination of alternative causes like these would necessarily involve individualized analysis. As these example make clear, individualized issues would swamp the Court's assessment of causation, and therefore Plaintiffs' Motion should be denied.  *See Amchem*, 521 U.S. at 624 (no predominance where each putative class member had "a different history of cigarette smoking, a factor that complicate[d] the causation inquiry" (quotation marks omitted)); *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 636 (S.D. Fla. 2010) (noting that "'individual issues are particularly likely to predominate . . . [where] members are likely to

have suffered different types of injuries at different times and through different causal mechanisms'' (quoting 5–23 James Wm. Moore et al., Moore's Federal Practice ¶ 23.45(5)(d)(i) (3d ed. 1999) and collecting authority)).

        *iii.*    *Breach of Implied Contract Requires Individualized Analysis.*

Plaintiffs' claim for breach of implied contract presents additional individualized issues precluding class certification. This is because whether a contract was ever formed, especially whether there was a meeting of the minds, is a highly individualized issue not suitable for class certification. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177-78 (D. Minn. 2014) ("[A] determination of the terms of the alleged implied contract is a factual question that a jury must determine."); *Abla v. Brinker Rest. Corp.*, 279 F.R.D. 51, 58 (D. Mass. 2011) ("It is not possible or advantageous to attempt to prove liability for breach of implied contract on a class-wide basis, because the very existence of a contract as to each event at each restaurant will be subject to individual proof and defense."); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 687 (S.D. Fla. 2008) ("[A]n individual inquiry would necessarily have to be conducted to determine whether a breach of contract occurred based upon each contract.").

Plaintiffs rely heavily on *Smith v. Triad of Ala., LLC* for the proposition that breach of implied contract claims arising out of a data breach are well-suited for class certification. That case, however, involved an implied in law contract, rather than an implied in fact contract like Plaintiffs assert here. *See* No. 1:14-cv-324-WKW, 2017 WL 1044692, at *11-12 (M.D. Ala. Mar. 17, 2017) (implied contract arose from Alabama law governing physician-patient relationships). The *Triad* court expressly distinguished the contract at issue in that case from

the type Plaintiffs attempt to assert here, explaining that, although a meeting of the minds is required for contracts implied in fact, there is no such requirement when the contract is implied in law. *Id.* at *12. Thus, the *Triad* decision in no way relieves Plaintiffs of their burden of proving that each proposed class member had a meeting of the minds with Wendy's on data security at its Franchisee Restaurants. *See Bank of Am. v. Gibbons*, 918 A.2d 565, 570-71 (Md. Ct. Spec. App. 2007) (meeting of the minds is required for implied-in-fact contracts but not implied-in-law contracts). The individualized nature of the inquiry required to carry that burden precludes Plaintiffs from establishing predominance.[8]

      b.  Variations in State Law Preclude Certification of Plaintiffs' Proposed Nationwide Class.

For Plaintiffs' proposed nationwide class, variations in state law add even more individualized issues that bar class certification. Florida's choice of law rules, which apply here because this Court is exercising diversity jurisdiction, follow the "most significant relationship test outlined in the Restatement (Second) of Conflicts of Laws" to determine which law should govern tort claims when a conflict exists. *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1333 (S.D. Fla. 2016) (citing *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (internal quotation marks omitted)).[9] Absent special circumstances, the "state where the injury occurred . . . [is] *the*

---

[8] Plaintiffs also gloss over that this was a breach of numerous different Wendy's *franchisees*. To the extent Plaintiffs seek to hold Wendy's liable for the conduct of its franchisees, Plaintiffs bear the burden of proving that common evidence exists to hold Wendy's indirectly liable for the conduct the numerous franchisees whose restaurants were impacted by the Data Theft. Plaintiffs have not come forward with any such evidence.

[9] "Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

*decisive consideration* in determining the applicable" law. *Id.* at 1333 (internal quotation marks and citations omitted) (emphasis added); *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).[10]  For contract claims, Florida follows the *lex loci contractus* rule under which a contract is governed by the law of the place where the contract was executed. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1162-63 (Fla. 2006).  Putative class members were likely injured in the states in which they reside, if at all, and to the extent any implied contract arose, it arose in the state in which they visited an impacted Franchisee Restaurant (while the restaurant was infected).  Because impacted restaurants are located in 46 states and Plaintiffs propose a nationwide class, the laws of all fifty states are implicated.  And, given the different choice of law standards for breach of contract and tort, some putative class members could have their claims governed by two different states' laws.

### i.  Plaintiffs' Failure to Perform the Required "Extensive Analysis" Precludes Certification of a Nationwide Class.

Plaintiffs fail to address – even in a perfunctory fashion – choice of law principles and the substantial differences among the various state negligence and breach of implied contract laws.  Instead, Plaintiffs appear to suggest that some general common law should apply across the board to Plaintiffs' claims.  But where, as here, the laws of many states are implicated, Plaintiffs *must* provide an "*extensive analysis* of state law variations to reveal whether these

---

incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *In re Takata Airbag*, 193 F. Supp. 3d at 1333.

[10] In fact, a "survey of the Florida cases applying . . . [its choice of law rules] suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute." *Howard v. Kerzner Int'l Ltd.*, No. 12-22184-Civ, 2014 WL 714787, *3 (S.D. Fla. Feb. 24, 2014) (internal quotation marks and citations omitted); *see also Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225 (S.D. Fla. 2002).

21

pose insuperable obstacles" to class certification.  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) (quotation and citation omitted) (emphasis added).  Plaintiffs' failure to conduct a proper choice of law analysis itself proves fatal to Plaintiffs' Motion.  *See In re Conagra Peanut Butter Prod. Liab. Litig.*, 251 F.R.D. 689, 698 (N.D. Ga. 2008) ("Plaintiffs seek to avoid [the common issue of law] hurdle by ignoring it. Whether treated as a predominance question or a manageability question, this is fatal to the quest for certification of a purchaser class."); *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 319 (S.D. Fla. 1998) ("If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied.").

*ii.    State Laws Vary Materially and Irreconcilably.*

In addition to Plaintiffs' failure to provide the requisite extensive analysis, class certification also must be denied because there are material variations in the fifty states' laws implicated by Plaintiffs' claims.   Given these differences in state laws, class certification is improper.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *In re Conagra Peanut Butter Prod. Liab. Litig.*, 251 F.R.D. at 698.

1.   State Negligence Law Varies Materially and Irreconcilably.

Plaintiffs turn a blind eye to the material differences that exist among the fifty states' negligence laws.  *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995) ("The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch."); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1078, 1085 (district court committed a "clear abuse of discretion" where it "failed to consider how the law of negligence differs from jurisdiction to jurisdiction").   Here, material differences exist with respect to (1) whether the state recognizes a duty to protect against data theft, (2) application of the economic loss rule ("ELR"), (3) causation, (4) damages, and (5) defenses.

•      Duty to Protect Against Data Theft:  Plaintiffs' negligence claim requires them to prove that Wendy's had a duty to safeguard Plaintiffs' information from criminal hackers.  *See Compl.* ¶ 106.   However, putative class members whose claims are governed by Indiana, Missouri, or Pennsylvania law cannot recover on a negligence claim because those states do not recognize a duty to prevent data breaches.  *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 640 (7th Cir. 2007) (Indiana); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 976 (N.D. Cal. 2016) (Indiana); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009); *Dittman v. UPMC*, 154 A.3d 318, 325 (Pa. Super. Ct. 2017).   Putative class members governed by Florida, Nevada, Alabama, or Kansas law, however, are differently situated because those states have held that a duty may exist to protect against data breaches. *See Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017); *In re Zappos.com, Inc.*, No. 3:12-CV-00325-RCJ-VPC, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013); *Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016); *Hapka*

*v. Carecentrix, Inc.*, No. 16-2372-CM, 2016 WL 7336407, at *5 (D. Kan. Dec. 19, 2016). Moreover, many states appear to have not addressed the issue of duty in the context of data breach. Thus, the Court will have to assess, as a matter of first impression, whether a given state would recognize a duty in these circumstances.

- Economic Loss Rule: The ELR, as applied by many states (including Ohio, Kansas, and Nevada),[11] bars negligence claims based on purely economic losses, like those asserted by Plaintiffs. *See* Compl. ¶ 118. In contrast, Alabama would likely not apply the ELR to data breach cases, *see Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 184 (Ala. 2010), and Arkansas does not adhere to the ELR, *Bayer CropScience LP v. Schafer*, 385 S.W.3d 822, 832-33 (Ark. 2011).

- Causation and Foreseeability: States also vary in their treatment of proximate cause and foreseeability. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1300 (directing the district court to decertify a class in part because "the meaning of negligence and the subordinate concepts[,]" such as proximate cause and foreseeability, vary amongst the different states); *Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2010 WL 1798441, at *8 (D. Or. May 4, 2010) (denying class certification in part based on variations in state law on proximate cause and duty).[12] This varying treatment would be significant in a case like this where the defendant,

---

[11] *See City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017) (Ohio); *Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 632 (Kan. 2013); *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3; *Sovereign Bank v. BJ's Wholesale Club*, Inc., 533 F.3d 162, 176 (3d Cir. 2008) (Pennsylvania).

[12] For example, some states require the harm to be a "natural and probable consequence" of the defendant's conduct. *E.g.*, *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008) ("The injury must be the natural and probable consequence of the wrongful act."); *Regions Bank & Tr. v. Stone Cty. Skilled Nursing Facility, Inc.*, 49 S.W.3d 107, 116 (Ark. 2001) (proximate cause exists "if the injury is the natural and probable consequence of the negligent act and ought to

Wendy's, is several steps removed from the actual claimed injuries (originating from a criminal hacker using a third-party vendor's credentials to get into a POS system used by an independently owned and operated Franchisee Restaurant), not to mention the varying actions/inactions of the plaintiffs and other third parties (such as PayPal).

• Damages:  Plaintiffs seek to hold Wendy's liable for a third-party criminal attack on the POS systems of third-party Franchisee Restaurants using the compromised credentials of two different third-party POS service providers.  Because of the number of implicated parties, apportionment of damages will be at the forefront of this case.  Under some states' laws, a defendant that is more than fifty percent responsible is jointly and severally liable for the entire damages award, and there is no liability if the plaintiff's own negligence exceeds fifty percent. *See, e.g.,* Ohio Rev. Code Ann. § 2307.22; *Armstrong v. Best Buy Co.*, No. 01CA007848, 2001 WL 1581568, at *2 (Ohio Ct. App. Dec. 12, 2001); Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.013; 42 Pa. Const. Stat. § 7102; Nev. Rev. Stat.  § 41.141; Iowa Code 668.3, 668.4.[13]  Other states allow for pure comparative fault without joint and several liability.  *See, e.g.,* Fla. Stat. Ann. § 768.81(3); Mich. Comp. Laws Ann. §§ 600.6304, 600.2957, 600.2959.

---

have been foreseen in the light of attending circumstances"); *Mussivand v. David*, 544 N.E.2d 265, 272 (Ohio 1989) ("If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence.").  Others, however, define proximate cause in terms of foreseeability.  *E.g.*, *Spann v. Shuqualak Lumber Co., Inc.*, 990 So. 2d 186, 190 (Miss. 2008) (holding the damage must be the type that the "negligent actor should reasonably expect (or foresee) to result"); *Abrams v. City of Chi.*, 811 N.E.2d 670, 675 (Ill. 2004) ("The relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." (quotation marks omitted)).

[13]  In Pennsylvania, the threshold is 60 percent. 42 Pa. Cons. Stat. § 7102(a.1)(3)(iii).  In Nevada, a defendant is only liable for his or her proportionate share. *Café Moda v. Palma*, 272 P.3d 137, 140 (Nev. 2012).

In yet other states, a plaintiff's negligence – in any amount – is a complete bar to recovery. *See Norfolk S. Ry. Co. v. Johnson*, 75 So.3d 624, 639-40 (Ala. 2011).

• <u>Additional Variations:</u>  In some states, the failure to mitigate damages is an affirmative defense.  *See, e.g.*, *Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency, Inc.*, 591 S.E.2d 88, 92 (Va. 2004); *Lemoine v. Mike Munna*, L.L.C., 148 So. 3d 205, 213 (La. Ct. App. 2014); *Mill Pond Condo. Ass'n v. Manalio*, 910 A.2d 392, 395 (Me. 2006).  In others, failure to mitigate is not an affirmative defense but a method of decreasing damages.  *See, e.g.*, *Kocher v. Getz*, 824 N.E.2d 671, 674 (Ind. 2005); *Stack v. City of Royal Oak*, No. 281294, 2009 WL 529230, at *3 (Mich. Ct. App. Mar. 3, 2009).

This Court would necessarily have to apply each of these varying definitions, burdens, and standards to resolve each putative class member's negligence claims.[14]  Indeed, were this case to proceed to trial, the Court would face the impossible task of crafting jury instructions to account for each state's variations.  For that reason, "plaintiff's negligence claim is not well suited for class certification."  *See Hayes v. Playtex Family Prods. Corp.*, 168 F.R.D. 292, 294 (D. Kan. 1996).

        2.   State Law of Implied Contract Varies Materially and Irreconcilably.

State law also differs considerably with respect to breach of implied contract claims, particularly (1) whether breach of implied contract is available in data breach cases and (2) the

---

[14] The same is true for breach of contract.  *Compare Frank Brunckhorst Co. v. JPKJ Realty, LLC*, 40 Misc.3d 1209(A), at *5 (N.Y. Sup. Ct. 2013) (failure to mitigate damages in breach of contract is an affirmative defense), *with Soules v. Indep. Sch. Dist. No. 518*, 258 N.W.2d 103, 106 (Minn. 1977) (the failure to mitigate damages in a breach of contract action limits the damages that may be recovered).

applicable causation standards.  *See Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 147 (2d Cir. 2015) ("Variations in state law similarly affect the feasibility and purported benefit of trying the contract claims on a class wide basis.").

- Application in Data Breaches:  In New York, Nevada, Florida, Texas, and Alabama, allegations nearly identical to those of Plaintiffs fail to state a claim.  *See In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (data breach plaintiffs failed to state a claim for breach of implied contact under Nevada, Florida, Texas, and Alabama law); *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1040 (N.Y. Sup. Ct. 2015).  Courts applying the laws of other states, however, have held that similar allegations may state a claim for breach of implied contract.  *See In re Target Corp.*, 66 F. Supp. 3d at 1176 (Minnesota); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 158-59 (1st Cir. 2011) (Maine).

- Causation:  States also vary considerably on whether proximate cause is a required element of a breach of implied contract claim.  For example, to prove breach of implied contract in New York, a plaintiff must prove proximate cause with specific, individualized facts related to whether the defendant's breach caused that particular plaintiff's harm.  *See Jorgensen v. Century 21 Real Estate Corp.*, 217 A.D.2d 533, 534 (N.Y. App. Div. 1995).  In Louisiana, however, "the term 'proximate cause' as used in the law of negligence has no application" to a breach of implied contract claim.  *Sw. Sugar & Molasses Co. v. Indus. Molasses Corp.*, 135 So.2d 481, 486 (La. Ct. App. 1961).

The significant state law variations that permeate Plaintiffs' common law claims for negligence and breach of implied contract alone warrant denying Plaintiffs' motion to certify a nationwide class.  *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 461 (D.N.J. 1998)

("Viewing the state law variations in the context of a case involving [two] state-law causes of action, the laws of the 5[0] applicable jurisdictions, and a very large number of plaintiffs, the Court must conclude that this suit cannot be practically and efficiently tried as a class action because Plaintiffs have not established a predominance of common legal issues[.]").

        *iii.*     *Due Process Precludes Certification of a Nationwide Class.*

Due process also precludes class certification.  "Putative class members have a due process right to have their claims governed by state law applicable to their dispute." *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 213 (E.D. Pa. 2000).  The Supreme Court has held that due process prohibits the application of a single state's law with "little or no relationship" to the transaction "in order to satisfy the procedural requirement that there be a common question of law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (quotation marks omitted); *see also In re Qualcomm Antitrust Litig.*, - F. Supp. 3d - , No. 17-MD-02773-LHK, 2017 WL 5235649, at *20 (N.D. Cal. Nov. 10, 2017).  Thus, for a state's law to be applied in a constitutionally permissible manner, it is necessary to analyze whether the chosen state has "significant contact or significant aggregation of contacts to the claims asserted by . . . [the putative class member], contacts creating state interests, in order to ensure that the choice of [] law is not arbitrary or unfair." *Shutts*, 472 U.S. at 821-22.  The individualized analysis required to determine which state's law may be applied to a specific putative class member consistent with due process presents additional individualized issues that preclude class certification.  *See Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd.*, No. 1:12-CV-2048-TWT, 2014 WL 988871, at *5 (N.D. Ga. Mar. 14, 2014) ("[T]he state law applicable to each members' common law claims for unjust enrichment and promissory estoppel would require individualized due

process determinations.  This is enough to show that common issues of law do not predominate for those claims.").[15]

Plaintiffs cannot sidestep this analysis by applying a single state's law to the entire nationwide class because it would violate Wendy's and many putative class members' due process rights.  For example, applying Florida law to a putative class member with no connection whatsoever to Florida, such as a California resident who visited a Franchisee Restaurant in California and was allegedly injured in California, would violate due process. *See Shutts*, 472 U.S. at 821-22; *Chin*, 182 F.R.D. at 457.  Accordingly, Plaintiffs cannot avoid the material differences in state law set forth above, and these alone require denial of Plaintiffs' request for certification of a nationwide class.

### c.   Individualized Damages Issues Preclude Class Certification.

Individualized issues would overwhelm the determination of not only liability but also damages.  Plaintiffs do not seek only statutory damages or damages for which the "calculations are formulaic." *Electrolux Home Prod., Inc.*, 817 F.3d at 1239.  To the contrary, they seek compensatory damages for unique injuries.[16]   Plaintiffs do not even attempt to offer any common or formulaic way to calculate those damages, nor do they come forward with the

---

[15] Granting Plaintiffs' Motion to certify a nationwide class asserting common law claims for negligence and breach of implied contract without resolving the significant variation among the putative class members' claims and innumerable choice of law considerations would also violate the Rules Enabling Act, 28 U.S.C. § 2072. *See Sacred Heart*, 601 F.3d at 1176 ("[G]lossing over the striking differences" between each plaintiff's claim "created an unnecessarily high risk" of violating the Rules Enabling Act and due process) (internal citations and quotations omitted).

[16] Plaintiffs seek the greater of actual or statutory damages for their claim under New York's consumer protection law. *See* Compl. ¶ 118.  Thus, an individualized assessment of actual damages is required for this claim.

testimony of an expert opining that there is a common way to calculate damages on a classwide basis.   The reason why is clear – Plaintiffs' own factual allegations demonstrate that the calculation of damages would necessarily involve the following individualized inquiries, among others.

- For putative class members claiming "injury" in the form of lost rewards points or cash back, the Court would need to individually assess (1) the purchases individuals would have made using the affected payment cards; (2) the terms of the rewards programs in effect when they would have made those purchases; and (3) the cash value of the lost points or cash back under those programs (if any).   Additional individualized issues would arise to the extent class members made the purchases in other ways or could have made purchases in other ways, including with different payment cards that also provided rewards points or cash back or purchases that were made or could have been made after receipt of their replacement card; a comparison between the purchases that the individuals allegedly did not make and any purchase made and the applicable rewards programs would be required to assess the net loss of rewards points or cash back.

- For putative class members alleging damages for time spent monitoring their financial accounts, the Court would need to determine (1) how much time each individual spent monitoring his or her account; (2) how much time that same individual would have

spent monitoring his or her account in the absence of the Data Theft;[17] (3) the difference

between the two numbers; and (4) the monetary value of the individual's time.

- For putative class members alleging late fees and other penalties, the Court would need
  to determine the value of each individual's late fees and any corresponding interest.

As these examples illustrate, Plaintiffs' damages defy generalized quantification.

It is precisely in such circumstances that Plaintiffs should designate a damages expert,

*see In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me.

2013) (denying class certification in a data breach action where plaintiffs offered no expert

testimony regarding damages), or at least propose a cogent methodology for calculating

damages on a classwide basis.  Notably, Plaintiffs fail to do either.  Instead, they seek refuge

in the rule that individual damages calculations generally do not defeat predominance.  "But –

as the Eleventh Circuit has acknowledged – 'th[is] black-letter rule has always been subject

[to] exceptions.'   And one such exception applies here: 'individual damages defeat

predominance when they are accompanied by significant individualized questions going to

liability.'"  *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 WL 364094, at *9 (N.D.

Ga. Jan. 25, 2017) (quoting *Electrolux*, 817 F.3d at 1240).   Here, individualized questions

predominate the determination of damages and liability.  The Court should accordingly deny

Plaintiffs' Motion.

---

[17] Plaintiffs Thomas and McConnell, for example, testified that they regularly monitored their
accounts before the Wendy's Data Theft. *See* ECF 114-11 at 174:6-175:8; ECF 114-5 at 71:5-
73:7.  Their testimony illustrates that, in some individuals' cases, time spent monitoring
accounts (or some portion thereof) may not be attributable to the Data Theft.  The
individualized nature of this inquiry shows another reason predominance is not satisfied.

### 2. *Plaintiffs Have Not Established Superiority.*

Plaintiffs' Motion to certify a class under Rule 23(b)(3) should also be denied because the numerous individualized issues bearing on both liability and damages discussed above render the proposed class action unmanageable. These individualized issues alone defeat superiority as courts have held that the predominance analysis has "a tremendous impact on the superiority analysis." *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 678 (M.D. Fla. 2010); *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d. 1265, 1274 (S.D. Fla. 2010) ("[m]anageability is the most salient problem with plaintiffs' proposed class" due to a number of individualized issues and denying class certification); *see also Vega v. T-Mobile*, 564 F.3d 1256, 1278 (11th Cir. 2009) (significant individualized issues "pose[] serious challenges to the efficiency and manageability of a class action proceeding").

In their Motion, Plaintiffs make an efficiency argument, citing case law for the general proposition that class actions may be appropriate to efficiently resolve claims where individual litigation is uneconomical. *See* Motion at 21-22. But Plaintiffs fail to offer any trial plan for how this class action could be litigated efficiently,[18] much less do they identify common evidence that could be used to (1) identify class members; (2) determine whether individual class members suffered a legally cognizable injury; (3) link the alleged injuries to Wendy's, as

---

[18] The Eleventh Circuit has made clear that, although a trial plan is not "necessarily a prerequisite, as a matter of law, for a finding of superiority in every case," there is a "direct correlation between the importance of a realistic, clear, detailed and specific trial plan and the magnitude of the manageability problems a putative class action presents." *Vega*, 564 F.3d at 1278 n.20. Here, there are significant individualized issues that present equally significant manageability concerns, and Plaintiffs have failed to even propose a trial plan.

opposed to another data breach or alternative cause; (4) address variations in state law going to the existence of a negligence duty and impact of the ELR, the standard for breach of implied contract, and the circumstances under which Wendy's may be held vicariously liable for the conduct of its Franchisees; and (5) calculate damages on a classwide basis.  Answering these questions would require a series of thousands, if not millions, of mini-trials, which is anathema to the class mechanism and defeats a find of superiority.  Indeed, Plaintiffs ask this Court to take on a virtual Pandora's Box when the individualized issues even among Plaintiffs themselves have already resulted in three of the Plaintiffs voluntarily dismissing their claims.

### D.  Rule 23(b)(2) Certification Is Improper.

Plaintiffs' request to certify a class under Rule 23(b)(2) should also be denied because Plaintiffs seek to recover significant, individualized money damages that are "not incidental to the injunctive" relief requested.  *See Dukes*, 564 U.S. at 360.  The Supreme Court has held that, in this context, the "absence of notice and opt-out violates due process."  *Id.* at 363.

Plaintiffs do not seek monetary relief incidental or tethered to the injunctive relief requested.  Instead, Plaintiffs seek compensatory damages for each class member, and the Complaint characterizes the aggregate alleged damages as "substantial."  Compl. ¶ 94; *see also id.* ¶ 118 and Request for Relief.  And as noted above in Section III(C)(1)(c), the damages calculation for each class member would be highly individualized.  Where it is necessary to calculate individual damages, the requested monetary relief cannot be considered incidental, and certifying a class under Rule 23(b)(2) is improper.  *See Dukes*, 564 U.S. at 360-63.

Plaintiffs' request to certify a class under Rule 23(b)(2) should also be denied because requests for injunctive relief are improper without "a serious risk of continuing irreparable

injury if the relief is not granted." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). Any alleged future injury must be "real and immediate," not merely "tenuous and hypothetical." *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *5 (11th Cir. 2002); *see also Washington v. Vogel*, 156 F.R.D. 676, 679, 683 (M.D. Fla. 1994). Here, Plaintiffs have abandoned any argument that they are at risk of future harm from the Data Theft. In response to Wendy's Motion for Summary Judgment, Plaintiffs asserted that they were injured because they purportedly lost cash back and/or reward points, spent time to address the compromise of their payment cards, were restricted from accessing their accounts and/or making purchases, and had their "sensitive information" misused through fraudulent charges that they incurred in the past. ECF 118 at 6; *see also id.* at 4-5. If these injuries have occurred, they occurred in the past. Plaintiffs do not contend that they remain at risk of future injury, let alone that any such injury would be sufficiently "real and immediate" to make injunctive relief appropriate. *See Drayton*, 2002 WL 32508918, at *5. Thus, the Court should deny Plaintiffs' request for certification under Rule 23(b)(2).

### E.  Issue Certification under Rule 23(c)(4) Is Not Warranted.

As an alternative to certification of all of Plaintiffs' claims, Plaintiffs seek to certify certain issue classes under Fed. R. Civ. P. 23(c)(4). *See* Motion at 22. Plaintiffs assert that these issue classes can be used to circumvent Rule 23(b)(3)'s predominance requirement, citing only to *Valentino v. Carter-Wallace, Inc.*, an outdated Ninth Circuit opinion, for support. *See id.* The Middle District of Florida and other districts in the Eleventh Circuit have consistently rejected this argument, holding that issue certification cannot be used to "manufacture predominance through the nimble use of subdivision (c)(4)." *Rink v. Cheminova, Inc.*, 203

F.R.D. 648, 651 (M.D. Fla. 2001) (internal quotation marks and citation omitted); *see also In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 321 F.R.D. 430, 447 (N.D. Ga. 2017); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 700 (S.D. Fla. 2014); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 316 (S.D. Ala. 2006).

Even under *Valentino* – outdated, out of jurisdiction precedent – Plaintiffs' issue classes should not be certified. *Valentino* confirms that each issue class that is certified must independently satisfy the requirements of Rule 23 and holds that issue certification is inappropriate where "[t]here has been no showing by Plaintiffs of how the class trial could be conducted." *See* 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs do not engage in a Rule 23 analysis for any of the proposed issue classes that they urge this Court to certify, and Plaintiffs offer no trial plan to demonstrate that it is feasible to try these issues on a classwide basis.

Indeed, both of the issues Plaintiffs seek to certify under Rule 23(c)(4) are fraught with individualized inquiries ill-suited for classwide adjudication. Specifically, Plaintiffs ask the Court to "certify each of the common issues enumerated . . . in Section III.C.2."[19] Motion at 22. Presumably, the two issues to which Plaintiffs refer are:

> 1) whether Wendy's owed a duty to and/or had an implied contract with its customers to adequately protect their personal and financial information; and
> 2) whether Wendy's breached its duties and/or its implied contract.

---

[19] Plaintiffs' failure to specifically identify the issue classes is an independent reason why Plaintiffs have failed to meet their burden under Rule 23(c)(4). *See Heaven v. Tr. Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997) ("[I]t is the plaintiff's burden to designate an appropriate class.").

Motion at 7.  As discussed above, neither of these issues can be decided with common evidence.  There is significant variation among the fifty states' laws bearing on whether a duty exists and the requirements for a breach of implied contract claim.  Likewise, Plaintiffs have not come forward with any common evidence that can prove either issue.  The Data Theft impacted Franchisee Restaurants only, not Wendy's.  Any duty analysis would not only have to resolve the numerous state law variations but would also have to account for the fact that the breach involved two different malware variants installed on hundreds of different Franchisee Restaurants.  The same individualized analysis plagues Plaintiffs' breach of implied contract claim because, as set forth above in Section III(C)(1)(a)(iii), the existence and terms of any implied contract turns on an examination of each putative class member's interaction not with Wendy's, but with one of the hundreds of impacted Franchisee Restaurants.[20]  Hence, issue certification is not appropriate because neither of the proposed classes "independently meet[s] the requirements of Rule 23."  *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (each separate class certified under Rule 23(c)(4) must "independently meet the requirements of Rule 23"); *see also Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441-42 (M.D. Fla. 2000) (refusing to certify issue classes where, within each of the issue classes, "[i]t is entirely possible – indeed probable – that other issues will come up during the course

---

[20] The same individualized inquiries that defeat predominance and issue certification also prevent Plaintiffs from establishing Rule 23(a)'s commonality requirement.  *See Dukes*,  564 U.S. at 350 ("[W]hat matters to class certification is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (alterations and internal quotations omitted).

of this litigation which will demand individualized treatment and thus tax the limited resources of the Court").[21]

Certifying the putative issue classes would also violate Wendy's Seventh Amendment right to trial by jury. "The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them . . . and not reexamined by another finder of fact." *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d at 1303. Because of the logistical impossibility of having a single jury decide the classwide issues plus all of the remaining individual issues on a plaintiff-by-plaintiff basis, the issues that are certified pursuant to Rule 23(c)(4) must be "sufficiently separate" from the remaining individual issues in order to avoid "infring[ing] on the constitutional right to a jury trial." *See Paternostro v. Choice Hotel Int'l Servs. Corp.*, 309 F.R.D. 397, 405 (E.D. La. 2015). The issues that Plaintiffs seek to separate out for classwide adjudication here impermissibly overlap with the issues that would be left to decide on an individualized basis. Plaintiffs request that the Court empanel a jury to decide the duty and breach elements of their negligence claim and the breach element of their implied contract claim on a classwide basis. Under Plaintiffs' proposal, individual trials (presumably heard by separate juries given the millions of putative class members swept in by Plaintiffs' overbroad definition) would decide the remaining issues. Wendy's would have the right at these individual trials "to make an evidentiary presentation . . . in order to acquaint the jury with all of the facts and circumstances"

---

[21] On top of this, Plaintiffs are silent as to how a trial of these two issues alone would promote efficiency. They cannot make this showing because even if these two issues could be answered on a classwide basis, they barely move the needle in resolving putative class members' claims because of the mountain of remaining individualized issues discussed above.

surrounding the issues that had been decided on a classwide basis in an effort to convince the jury that fault should be apportioned among other individuals and entities. *See Rink*, 203 F.R.D. at 652; *see also Ventrudo v. United States*, 205 F. Supp. 3d 1298, 1300 (M.D. Fla. 2016) ("The only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants." (internal quotation marks and citation omitted)). Specifically, because the Data Theft impacted Wendy's Franchisees and was caused by the criminal infiltration of third-parties' networks, each individual jury would be required to reconsider the classwide jury's determinations about whether and to what degree Wendy's was negligent in light of Wendy's unique relationship with each of the Franchisees and third-party vendors whose systems were infiltrated in order to assess whether to apportion fault to these entities. The proximate cause inquiry also "overlaps the issue of the defendants' negligence" because it asks "whether the harm to the plaintiff followed in some sense naturally, uninterruptedly, and with reasonable probability from the negligent act of the defendant." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1303. For these reasons, the issues Plaintiffs seek to certify are not "sufficiently separate" and Plaintiffs' proposal to sever the duty and breach elements from the rest of their claims to resolve them on a classwide basis would violate Wendy's constitutional right to avoid having subsequent juries reexamine issues that a jury had already adjudicated. *See Paternostro*, 309 F.R.D. at 405 (rejecting attempt to certify issue classes for duty, breach, and general causation elements of negligence claim).

**F.   Plaintiffs' Motion Should Be Denied in Its Entirety Because Typicality Is Lacking.**

To satisfy the typicality requirement Plaintiffs must "possess the same interest and suffer the same injury as the class members." *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).   "The main focus of the typicality requirements is that the plaintiffs will advance the interests of the class members by advancing their own interests." *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 627 (M.D. Fla. 2010) (internal citation omitted); *see Bouton*, 2017 WL 4413994, at *11; *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996) ("In other words, the named representatives must be able to establish the bulk of the elements of each class members' claims when they provide their own claims").   Thus, although some variation between the named Plaintiffs and the putative class is permitted, typicality is lacking where the "factual position of the representative markedly differs from that of the other members of the class."   *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Truesdell v. Blair*, No. 5:13-cv-552-Oc-10PRL, 2015 WL 12681655, at *9 (M.D. Fla. Feb. 13, 2015) ("too many variations" concerning impact of data breach among class members defeated typicality).

Plaintiffs lack typicality because their alleged injuries and interests differ markedly from those of the putative class.   As a threshold matter, Mr. Jackson's claims are atypical because he is not even a member of the proposed class; he does not even allege that he used his payment card at a Wendy's restaurant.   The remaining Plaintiffs, moreover, each allege highly individualized facts and theories of harm as set forth in more detail in the Summary Judgment briefing.   There is simply no nexus between the injuries and interests asserted by Plaintiffs and the members of the putative class – advancing the Plaintiffs' claims does nothing

to advance the claims of the remaining class members.  *See Walco*, 168 F.R.D. at 326 (noting

that a plaintiff must come forward with more than conclusory allegations and that "the named

representatives must be able to establish the bulk of the elements of each class members' claims

when they prove their own claims"); *Gonzalez v. Corning*, 317 F.R.D. 445, 503-04 (W.D. Pa.

2016) (typicality not satisfied because individualized factual inquiry was required to assess

whether putative class members' claims had accrued).   The extreme overbreadth of the

proposed class magnifies the gulf between the Plaintiffs and the putative class by sweeping in

millions of individuals who could not have a claim and precludes Plaintiffs from satisfying

Rule 23's typicality requirement.  *See Romberio v. Unumprovident Corp.*, 385 F. App'x 423,

431 (6th Cir. 2009) ("Where a class definition encompasses many individuals who have no

claim at all to the relief requested . . . , the typicality premise is lacking . . . ."); *Oshana v.

Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (same).

## IV.    CONCLUSION

For the reasons set forth herein, Wendy's respectfully requests that the Court deny

Plaintiffs' Motion for Class Certification.

[SIGNATURES ON THE FOLLOWING PAGE]

Respectfully submitted this 16th day of January, 2018.

/s/ Kristine M. Brown
Kristine McAlister Brown
Florida Bar Number 433640
Donald M. Houser
*Admitted Pro Hac Vice*
**ALSTON & BIRD LLP**
1202 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone:  (401) 881-7000
Facsimile:   (401) 881-7777
kristy.brown@alston.com
donald.houser@alston.com

Dominique R. Shelton
*Admitted Pro Hac Vice*
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1000
Facsimile:   (213) 576-1100
dominique.shelton@alston.com

Johanna W. Clark
Florida Bar Number 196400
**CARLTON FIELDS JORDEN
BURT, P.A.**
450 South Orange Avenue, Suite 500
Orlando, Florida 32801
Telephone:  (407) 849-0300
Facsimile:   (407) 648-9099
jclark@cfjblaw.com

***Attorneys for Wendy's International, LLC***

41

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.  Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

By:  *Kristine McAlister Brown*
     Kristine McAlister Brown
     Florida Bar Number 433640
     **ALSTON & BIRD LLP**
     1202 West Peachtree Street
     Atlanta, Georgia 30309-3424
     Telephone:  (401) 881-7000
     Facsimile:  (401) 881-7777
     kristy.brown@alston.com