## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement"), dated as of July 24, 2018, is made and entered into by and among the following Parties: (i) Christine Jackson, Ashley McConnell, and Gerald Thomas ("Representative Plaintiffs"), individually and on behalf of the Settlement Class, by and through John A. Yanchunis of Morgan & Morgan Complex Litigation Group ("Lead Counsel"); and (ii) Wendy's International, LLC ("Wendy's"), by and through its counsel of record, lead counsel Kristine M. Brown and Donald M. Houser of Alston & Bird LLP.

## RECITALS

1.01    On February 8, 2016, Jonathan Torres filed the initial complaint in the United States District Court for the Middle District of Florida (the "Court") in an action styled *Jonathan Torres et al. v. Wendy's International, LLC*, Case No. 6:16-cv-210-PGB-DCI (the "Litigation").   On July 29, 2016, an amended complaint was filed adding new plaintiffs, Ashley McConnell, Roxanne Gant, Christine Jackson, Donald Jackson, Cory Beadles, and Gerald Thomas.   On April 3, 2017, Plaintiffs Jonathan Torres, Ashley McConnell, Roxanne Gant, Christine Jackson, Donald Jackson, and Gerald Thomas filed the Second Amended Class Action Complaint (the "Complaint"). Thereafter, Plaintiffs Jonathan Torres, Roxanne Gant, and Donald Jackson filed stipulations of dismissal of their claims, leaving Ashley McConnell, Christine Jackson, and Gerald Thomas as the remaining named plaintiffs in the case (the "Representative Plaintiffs").

1.02    The Complaint asserts claims against Wendy's for breach of implied contract, negligence, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of the New York Business Law, N.Y. Gen. Bus. Law §§ 349 et seq., violation of the Tennessee Consumer Protection, Tenn. Code Ann. §§ 47-18-101 et seq., violation of the New Jersey Consumer Fraud

Act, and violation of the Texas Deceptive Trade Practices – Consumer Protection Act, arising out of third-party criminal attacks on the point of sale systems of certain of Wendy's independently owned and operated franchisee restaurants (the "Security Incident," as further defined in Section I below).

1.03     Wendy's denies all material allegations of the Complaint.   Wendy's specifically disputes that it is liable in any way for the criminal third-party attacks on certain point of sale systems of its independently owned and operated franchisees and that Representative Plaintiffs and putative class members are entitled to any relief from Wendy's.   Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Wendy's has agreed to settle this litigation on the terms set forth in this Agreement, subject to Court approval.

1.03     This Agreement resulted from good faith, arm's-length settlement negotiations, including a full-day mediation session before David Lichter, Esq.   Prior to this mediation, the Parties engaged in extensive discovery during which Wendy's provided voluminous documents and data to Plaintiffs' counsel and Plaintiffs' counsel deposed multiple Wendy's witnesses. Wendy's also deposed the Representative Plaintiffs, and the Representative Plaintiffs produced documents to Wendy's.   The Parties also participated in numerous direct discussions about possible resolution of this litigation.

1.04     Plaintiffs' counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the putative class in the Litigation.   Based on this investigation and the negotiations described above, Plaintiffs' counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Agreement, that

a settlement with Wendy's on the terms set forth in this Agreement is fair, reasonable, adequate and in the best interests of the putative class.

1.05    The Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any of the Parties except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any of the Parties to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

1.06    The settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein.  This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all claims and causes of action asserted, or that could have been asserted, against Wendy's and the Released Persons (as defined in Section I below) arising out of or relating to the Security Incident, by and on behalf of the Representative Plaintiffs and Settlement Class Members (as defined in Section I below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States.

## I.    DEFINITIONS.

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Approved Claims" means Settlement Claims completed using a Claim Form found to be valid by and in an amount approved by the Settlement Administrator.

1.2     "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and the processing of payment of Approved Claims by the Settlement Administrator.

1.3     "Claims Deadline" means the deadline by which Settlement Class Members must submit any Settlement Claims; Settlement Claims submitted after the Claims Deadline will not be timely and will not qualify for approval as set forth in Section II and will be rejected. The Claims Deadline shall be set by the Court in the Preliminary Approval Order. The parties propose a Claims Deadline that is the 180th day after the commencement of the Notice Program pursuant to ¶ 4.26.

1.4     "Claim Form" shall mean the claim form attached as Exhibit A, or a claim form approved by the Court that is substantially similar to Exhibit A.

1.5     "Claims Period" shall mean the time for Settlement Class Members to submit claims, running from the commencement of the Notice Program through the Claims Deadline.

1.6     "Class Counsel" means Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm, together with Lead Counsel.

1.7     "Costs of Settlement Administration" means all actual costs associated with or arising from Claims Administration and the Notice Program as set forth in Section IV. The Costs of Settlement Administration shall be paid to the Settlement Administrator.

1.8     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.1 herein have occurred and been met.

1.9     "Judgment" means a final order and judgment rendered by the Court that, among other things, finally approves the Settlement Agreement and is consistent with ¶ 3.2 and in the

form of or materially in the form of the proposed Final Approval Order and Judgment attached as Exhibit F.

1.10   "Lead Counsel" means John A. Yanchunis of Morgan & Morgan Complex Litigation Group.

1.11   "Parties" means, collectively, Wendy's and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.12   "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and further includes, without limitation, names, addresses, payment card numbers, expiration dates, security and service codes, and any other payment card related information.

1.13   "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and, among other things, ordering that notice be provided to the Settlement Class, and in the form of or materially in the form of the proposed Preliminary Approval Order attached as Exhibit E.

1.14   "Released Persons" means The Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, and their current and former parents, subsidiaries, affiliated companies, and divisions, whether indirect or direct, as well as these entities' respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.  For the avoidance of doubt, "Released Persons" does not include any past or current franchisees of Wendy's or any third party, unaffiliated vendors, such as WAND Corporation, NCR, and DUMAC Business Systems, Inc.

1.15   "Released Claims" shall mean any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and

character, known and unknown, including without limitation, negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Security Incident (including but not limited to the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation and/or Complaint.  For the avoidance of doubt, "Released Claims" does not include any claims arising out of the Security Incident or the allegations, facts, or circumstances described in the Litigation and/or Complaint that Settlement Class Members may have against past or current franchisees of Wendy's or third party, unaffiliated vendors, such as WAND Corporation, NCR, and DUMAC Business Systems, Inc.

    1.16   "Representative Plaintiffs" means Ashley McConnell, Christine Jackson, and Gerald Thomas.

    1.17   "Security Incident" means the third-party criminal cyberattacks of certain of Wendy's independently owned and operated franchisee restaurants involving malware variants

targeting customers' payment card information that Wendy's reported in 2016, and that is the subject of the Litigation and Complaint.

1.18   "Settlement Agreement" or "Agreement" means this agreement.

1.19   "Settlement Claim" means a claim or request for settlement benefits as provided for in Section II ("Monetary Relief") of this Settlement Agreement.

1.20   "Settlement Administrator" means KCC Class Action Services, LLC, as agreed by the Parties, which is experienced in formulating and effectuating notice programs and administering class action claims, generally and specifically those of the type provided for and made in data breach litigation.

1.21   "Settlement Class" means all residents of the United States whose Personal Information was compromised as a result of the Security Incident. The Settlement Class specifically excludes: (i) Wendy's and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.22   "Settlement Class Member" and "Settlement Class Members" mean all persons residing in the United States who fall within the definition of the Settlement Class.

1.23   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected

his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.24    "Wendy's" means Wendy's International, LLC.

## II.     MONETARY RELIEF.

2.1     <u>Expense Reimbursement</u>. All Settlement Class Members who submit a valid Settlement Claim using the Claim Form, which is attached as Exhibit A to this Settlement Agreement and may be completed electronically, are eligible to receive reimbursement for documented out-of-pocket expenses, that were incurred as a result of the Security Incident for one or more of the following, not to exceed a total of $5,000.00 per Settlement Class Member: (i) costs and expenses spent addressing identity theft or fraud; (ii) losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees); (iii) preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review; (iv) late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees; (v) unauthorized charges on credit or debit card that were not reimbursed; (vi) other documented losses that were not reimbursed; and (vii) up to five hours of documented time spent remedying issues relating to the Security Incident (calculated at the rate of $15.00 per hour).

2.1.1     Settlement Class Members seeking reimbursement under ¶ 2.1 must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or submitted electronically in accordance with the requirements for electronic submission of a Claim Form) on or before the Claims Deadline. The Claim Form must be verified by the Settlement Class Member with a statement that his or her Settlement Claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. The Claim Form may be completed electronically in accordance with the requirements for electronic submission of a Claim Form, and notarization shall not be required. The Settlement Class Member must submit reasonable documentation to support that the out-of-pocket expenses and charges claimed were

incurred because of, and plausibly arose from, the Security Incident. Documentation for time spent shall include, but is not limited to, the following documents to the extent reasonably related to the Security Incident: phone records, email records, correspondence with financial institution, police departments or governmental agencies, and documents evidencing fraud. Documentation may be submitted electronically in accordance with procedures for electronic Claim Form submission. Failure to provide supporting documentation as requested on the Claim Form shall result in denial of the Settlement Claim.

2.2    <u>Undocumented Time Spent</u>. Any Settlement Class Member who spent time and effort dealing with repercussions of the Security Incident, but does not have documentation of such time and effort, will be eligible to submit a Settlement Claim for time spent in an amount of $15 per hour up to two hours (for a total of $30). Settlement Class Members are eligible to submit Settlement Claims for both Expense Reimbursement, ¶ 2.1, and Undocumented Time Spent, ¶ 2.2, not to exceed a total of $5,000.00 per Settlement Class Member.

2.2.1    Settlement Class Members seeking reimbursement under ¶ 2.2 must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or submitted electronically in accordance with the requirements for electronic submission of a Claim Form) on or before the Claims Deadline, which the Parties propose shall be the 180th day after the commencement of the Notice Program as set forth in ¶ 4.6. The Claim Form must be verified by the Settlement Class Member with a statement that his or her Settlement Claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. The Claim Form may be completed electronically in accordance with the requirements for electronic submission of a Claim Form, and notarization shall not be required. The Settlement Class Member

must represent that the time and/or effort spent was incurred because of, and plausibly arose from, the Security Incident.

2.3   Claims Process. The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information required to complete the Claim Form by the Claims Deadline, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1; and (3) the information submitted would lead a reasonable person to conclude, for a Settlement Claim for Expense Reimbursement submitted under ¶ 2.1, that the alleged expenses plausibly arose from the Security Incident ("Facially Valid"). The Settlement Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Settlement Administrator may reasonably require in order to evaluate the Settlement Claim, e.g., documentation requested on the Claim Form and information regarding the claimed losses.

2.3.1   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Settlement Administrator shall request additional information (i.e., Claim Supplementation) and give the claimant 30 days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within 30 days after the Claims Deadline. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (e.g., illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than 180 days from the Effective Date. If the defect is not

cured, then the Settlement Claim will be deemed invalid and there shall be no obligation to pay the Settlement Claim.

2.3.2 Following receipt of additional information requested as Claim Supplementation, the Settlement Administrator shall have 30 days to accept, in whole or lesser amount, or reject each Settlement Claim. If, after review of the Settlement Claim and all documentation submitted by the claimant, the Settlement Administrator determines that such a Settlement Claim is Facially Valid, then the Settlement Claim shall be paid within the time period provided by ¶ 9.2 to the extent that the Settlement Administrator finds the Settlement Claim to be valid. If the Settlement Claim remains invalid because the claimant does not provide the requested information needed to complete the Claim Form and evaluate the Settlement Claim, then the Settlement Administrator may reject the Settlement Claim without any further action.

2.4 <u>Aggregate Cap</u>. The aggregate amount of Approved Claims reimbursement under ¶¶ 2.1-2.2; attorneys' fees, costs, and expenses under ¶ 8.2; and service awards to the Representative Plaintiffs under ¶ 8.3 for which Wendy's shall be responsible to pay is capped at $3,400,000.00. If the total amount of Approved Claims submitted under ¶¶ 2.1-2.2, when aggregated with attorneys' fees, costs and expenses, and services awards, exceeds the $3,400,000.00 cap, the Approved Claims under ¶¶ 2.1-2.2 shall be reduce on a pro rata basis such that the total aggregate amount of Approved Claims under ¶¶ 2.1-2.2, attorneys' fees, costs and expenses, and service awards does not exceed the Aggregate Cap of $3,400,000.00. If the amount of Approved Claims plus the awarded attorneys' fees, costs and expenses, and service awards is less than $3,400,000.00, Wendy's will retain any unclaimed amount. In no event shall Wendy's liability or obligation under this Settlement Agreement exceeds the Aggregate Cap of $3,400,000.00, plus the Costs of Settlement Administration as set forth ¶ 2.5.

2.5     Settlement Expenses.   All Costs of Settlement Administration as required under ¶¶ 2.5, 4.1, and 9.1, shall be borne alone by Wendy's and paid by Wendy's to KCC and shall not be subject to the Aggregate Cap of $3,400,000.

## III.    PRELIMINARY APPROVAL AND FINAL APPROVAL

3.1     As soon as practicable after the execution of the Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit E, or an order substantially similar to such form, requesting, *inter alia*:

(a)     certification of the Settlement Class for settlement purposes only;

(b)     preliminary approval of the Settlement Agreement;

(c)     appointment of John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Counsel;

(d)     appointment of Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm as Class Counsel;

(e)     appointment of the Representative Plaintiffs as settlement class representatives;

(f)     approval of the Notice Program, including the Publication Plan set forth in the Declaration of Carla Peak of KCC attached hereto as Exhibit D;

(g)     approval of a publication notice form ("Publication Notice") substantially similar to the one attached hereto as Exhibit B and long form notice ("Long Notice") substantially

similar to the one attached hereto as Exhibit C, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making Settlement Claims to the extent contemplated herein, and the date, time and place of the final approval hearing;

(h)     appointment of the Settlement Administrator; and

(i)     approval of a claim form substantially similar to that attached hereto as Exhibit A.

The Long Notice, Publication Notice, and Claim Form shall be reviewed by the Settlement Administrator and may be revised as agreed upon by the Parties prior to such submission to the Court for approval.

3.2     The proposed Judgment that shall be filed with the motion for final approval shall be in a form as set forth in Exhibit F as agreed upon by Wendy's and Class Counsel. Such proposed Judgment shall, among other things:

(a)     Determine that the Settlement Agreement is fair, adequate, and reasonable;

(b)     Finally certify the Settlement Class for settlement purposes only;

(c)     Determine that the Notice Program satisfies due process requirements;

(d)     Dismiss all claims in the Complaint with prejudice;

(e)     Bar and enjoin the any Settlement Class Members who did not timely opt out in accordance with the requirements of the Settlement Agreement from asserting any of the Released Claims; and

(f)     Release and forever discharge Wendy's and the Released Persons from the Released Claims, as provided for in this Settlement Agreement.

## IV.     NOTICE PROGRAM.

4.1     Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause notice to be disseminated to the Settlement Class pursuant to the Preliminary Approval Order and Paragraphs 4.1 to 4.6 of this Settlement Agreement (the "Notice Program"), and in order to comply with all applicable laws, including, but not limited to the Due Process clause of the United States Constitution and FED. R. CIV. P. 23, and be effectuated pursuant to provisions set forth below, the costs of which shall be Costs of Settlement Administration.

4.2     Notice shall be provided to Settlement Class Members via publication notice and notice on a dedicated settlement website.

4.2.1     Within 30 days after the Preliminary Approval Order, Publication Notice, as set forth in Exhibit B, shall be provided to Settlement Class Members in accordance with the Publication Plan set forth in Exhibit D.

4.2.2     Within 30 days after the Preliminary Approval Order, Wendy's shall post a link to the settlement website accessible through the "Payment Card Incident" link on www.Wendys.com for the entire Claims Period.

4.2.3     Within 30 days after the Preliminary Approval Order, the Settlement Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the Claims Period, with the Publication Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line shall be made available to address Settlement Class Members' inquiries. The Settlement Administrator also will provide copies of the forms of Publication Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.

4.3     The Notice Program shall be subject to approval by the Court as meeting constitutional due process requirements.

4.4     The Long Notice, Publication Notice, and Claim Form approved by the Court may be adjusted by the Settlement Administrator, respectively, in consultation and agreement with the Parties, as may be reasonable and necessary and not inconsistent with such approval.

4.5     Prior to the final approval hearing, Lead Counsel and Wendy's counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Court-approved Notice Program.

4.6     The Notice Program shall be deemed to commence 30 days following entry by the Court of a Preliminary Approval Order in the form attached hereto as Exhibit E, or an order substantially similar to such form.

## V.     OPT-OUT PROCEDURES.

5.1     Each Settlement Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator.   The written opt out notice must clearly manifest a person's intent to be excluded from the Settlement Class.

5.1.1   The written opt out notice must include the individual's name and address; a statement that he or she wants to be excluded from the Settlement Class; and the individual's signature.   The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the final approval hearing.

5.1.2   To be effective, written opt out notice must be postmarked no later than 120 from the Preliminary Approval date.

5.2   All persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement.   All persons falling within the definition of the Settlement Class who do not submit valid and timely notices of their intent to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Judgment entered thereon.

## VI.   OBJECTION PROCEDURES.

6.1   Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection.   Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the final approval hearing; (vi) a list of all persons who will be called to testify at the final approval hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the final approval hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel

(on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

6.1.1   To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than 120 days from the Preliminary Approval date, and served concurrently therewith upon Lead Counsel, John A. Yanchunis, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, FL 33602; and counsel for Wendy's, Donald M. Houser, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, GA 30309.

6.2   Except upon a showing of good cause, any Settlement Class Member who fails to substantially comply with the requirements for objecting in ¶ 6.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.   The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 6.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## VII.   PLAINTIFFS' RELEASE.

7.1   Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class

Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum in which any of the Released Claims are asserted.

It is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Settlement Class Members from pursuing claims related to the Security Incident against any person who is not a Released Person.

## VIII.   PROPOSED CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES; AND SERVICE AWARD TO REPRESENTATIVE PLAINTIFFS.

8.1     The Parties did not negotiate the payment of the Representative Plaintiffs' attorneys' fees, costs, expenses and/or service award to Representative Plaintiffs, as provided for in ¶¶ 8.2 and 8.3, until after the substantive material terms of the settlement had been agreed upon, other than that Wendy's would pay reasonable attorneys' fees, costs and expenses, and a service award to Representative Plaintiffs as may be agreed to by Wendy's and Class Counsel and/or as ordered by the Court. Wendy's and Class Counsel then negotiated and agreed as follows:

8.2     Class Counsel will request 30% of the Aggregate Cap of $3,400,000.00 ($1,020,000.00) from the Court for their attorneys' fees as well as requesting reimbursement of their reasonable costs and expenses from the Aggregate Cap. In no event shall the total amount of Approved Claims, attorneys' fees, costs, expenses, services awards, and any other fees, costs, or expenses incurred by Wendy's under this Settlement Agreement exceed the Aggregate Cap of $3,400,000.00, with the sole and exclusive exception that the Costs of Settlement Administration as set forth in ¶ 2.5 shall not be included when calculating whether the Aggregate Cap of $3,400,000.00 has been reached. Class Counsel agree to waive and hereby forego seeking attorneys' fees except as provided for in this Settlement Agreement. Lead Counsel, in his sole

discretion, shall allocate and distribute the amount of attorneys' fees and costs and expenses awarded by the Court among Class Counsel.

8.2.1   Class Counsel may request the reimbursement of additional fees, costs, and expenses, in excess of 30% of the Aggregate Cap, if: (1) Class Counsel incurs such fees, costs, or expenses after the Court has entered an Order of Preliminary Approval of the Settlement; (2) such fees, costs, and expenses, are outside of the routine settlement notice, administration, and approval process (e.g., were incurred in connection with responding to objections that are denied by the Court; litigating appeals; addressing atypical aspects of the settlement process), and (3) the amount of Approved Claims plus the service awards is less than 70% of the Aggregate Cap of $3,400,000.00. In no event shall the total amount of Approved Claims, attorneys' fees, costs, expenses, services awards, and any other fees, costs, or expenses incurred by Wendy's under this Settlement Agreement (including without limitation any fees, costs, and expenses under this ¶ 8.2.1) exceed the Aggregate Cap of $3,400,000.00, with the sole and exclusive exception that the Costs of Settlement Administration as set forth in ¶ 2.5 shall not be included when calculating whether the Aggregate Cap of $3,400,000.00 has been reached.

8.3   Class Counsel will request from the Court a service award for Representative Plaintiffs in the amount of $5,000.00 each. Wendy's agrees not to object to this request, and to pay the amount the Court awards to Representative Plaintiffs as a service award up to and including $5,000.00 each. In no event shall the total amount of Approved Claims, attorneys' fees, costs, expenses, services awards, and any other fees, costs, or expenses incurred by Wendy's under this Settlement Agreement exceed the Aggregate Cap of $3,400,000.00, with the sole and exclusive exception that the Costs of Settlement Administration as set forth in ¶ 2.5 shall not be included when calculating whether the Aggregate Cap of $3,400,000.00 has been reached.

8.4     Within 15 business days after the Effective Date, Wendy's shall pay the court approved attorneys' fees, costs, expenses, and service awards to Representative Plaintiffs, as set forth above in ¶¶ 8.2 and 8.3, to an account established by Lead Counsel.  Lead Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Class Counsel and service awards to Representative Plaintiffs.  In no event shall the total amount of Approved Claims, attorneys' fees, costs, expenses, services awards, and any other fees, costs, or expenses incurred by Wendy's under this Settlement Agreement exceed the Aggregate Cap of $3,400,000.00, with the sole and exclusive exception that the Costs of Settlement Administration as set forth in ¶ 2.5 shall not be included when calculating whether the Aggregate Cap of $3,400,000.00 has been reached.

8.5     The finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of attorneys' fees, costs, expenses, or service awards. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs and expenses, and/or service awards ordered by the Court to Class Counsel or Representative Plaintiffs shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement.

## IX.     ADMINISTRATION OF CLAIMS.

9.1     The Settlement Administrator shall administer and calculate the Settlement Claims submitted by Settlement Class Members and give reports as to both claims and distributions to Class Counsel and Wendy's.  Class Counsel and Wendy's have the right to review and obtain supporting documentation and challenge those reports if they believe them to be inaccurate or inadequate. All Settlement Claims agreed to be paid in full or in part by Wendy's shall be deemed valid up to the amount paid.

9.2    Payment of Approved Claims shall be made by check and shall be mailed and postmarked within 60 days after the Effective Date, or within 30 days after the date that the Settlement Claim is approved, whichever is latest.  After the Effective Date but with sufficient time for Approved Claims to be paid as provided for by this ¶ 9.2, Wendy's shall cause to be disbursed to an account as directed by the Claims Administrator funds sufficient for the Claims Administrator to pay the Approved Claims.

9.3    All Settlement Class Members who fail to timely submit a Settlement Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

9.4    No person shall have any claim against the Settlement Administrator, Released Persons, Lead Counsel, Class Counsel, Wendy's counsel, and/or Representative Plaintiffs based on distributions of benefits to Settlement Class Members.

## X.    CONDITIONS OF SETTLEMENT, CANCELLATION, OR TERMINATION.

10.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Order of Preliminary Approval with notice of a final approval hearing, as required by ¶ 3.1;

(b)    the Court has entered the Judgment granting final approval to the Settlement Agreement (among other things) as set forth herein; and

(c)    Either (i) thirty (30) days have passed after entry of the final Judgment (i.e., the Judgment is entered as a final judgment) and no appeal is taken after the Judgment's entry and

no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the Judgment or to toll the time for appeal of the Judgment; or (ii) all appeals, reconsideration, rehearing, or other forms of review and potential review of the Judgment are exhausted, and the Judgment is upheld without any material modification of the terms of this Agreement.

10.2    If all of the conditions specified in ¶ 10.1 hereof are not satisfied, the Settlement Agreement shall be deemed terminated and/or canceled unless Class Counsel and Wendy's counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3    The Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the Settlement Agreement is not approved by the Court or the Settlement Agreement is terminated and/or cancelled in accordance with its terms (including without limitation in accordance with ¶ 10.2 or ¶ 10.4), then (a) the Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue), and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Wendy's shall be obligated to pay amounts already billed or incurred for costs of notice to the

Settlement Class and Claims Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

10.4    The Settlement Agreement may be terminated and/or cancelled by any of the Parties if (i) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily approve or finally approve the Settlement Agreement; (ii) an appellate court reverses the final approval order and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, Preliminary Approval Order, the proposed Judgment, the Judgment, or the Settlement Agreement.

10.5    Notwithstanding any provision of this Settlement Agreement to the contrary, including but not limited to ¶ 10.4, and for the avoidance of any doubt, the finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of attorneys' fees, costs, expenses, or service awards. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs and expenses, and/or service awards ordered by the Court to Class Counsel or Representative Plaintiffs shall affect whether the Judgment is final or constitute grounds for cancellation and/or termination of this Settlement Agreement.

10.6    Wendy's shall have the sole discretion to terminate the Settlement Agreement if a certain number of Settlement Class Members submit valid requests to opt out as separately agreed to by the Parties and, if requested, submitted to the Court for *in camera review*.

## XI.    MISCELLANEOUS PROVISIONS.

11.1    The Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Litigation.    The Settlement Agreement compromises claims that are contested and shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.  The Parties each agree that the settlement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

11.3    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.4    The Settlement Agreement, together with the Exhibits attached hereto, as well as the agreement pursuant to ¶ 10.6, constitute the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document.  Except as otherwise provided herein, each party shall bear its own costs.  This agreement supersedes all previous agreements made by the Parties.

11.5    Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the

Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

11.6    Each counsel or other person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such person has the full authority to do so.

11.7    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

11.8    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

11.9    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

11.10   The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Florida, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Florida without giving effect to choice of law principles.

11.11   The final approval hearing shall be scheduled no earlier than 90 days after the notices are made in order to comply with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

11.12   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

11.13   All dollar amounts are in United States dollars.

11.14   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void 90 days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until 150 days after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Wendy's shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under paragraph 2.1 or paragraph 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.15   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Lead Counsel for Representative Plaintiffs
and the Settlement Class

Counsel for Wendy's and Duly Authorized
Signatory

_____

John A. Yanchunis

_____

Donald M. Houser

# EXHIBIT A - CLAIM FORM

*In re: Wendy's Data Security Breach Litigation*,
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

> COMPLETE AND SIGN THIS FORM AND
> FILE ONLINE NO LATER THAN
> **[due date]**
> at www.settlementwebsite.com
> or file by mail postmarked by **[due date]**

## CLAIM FORM

### CLASS MEMBER INFORMATION

Full Name: _____

Mailing Address: _____

City: _____ State: _____ ZIP: _____

Telephone Number: _____

Email Address (optional): _____
(if provided, we will communicate primarily by email about your claim)

### SETTLEMENT OVERVIEW

#### Documented Losses and Time
If you have documentation establishing that you suffered out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Wendy's data breach, you can make a claim for reimbursement *up to* $5,000, including up to 5 hours of documented time at $15 per hour. You must submit supporting documentation for this claim.

#### Self-Certifying Time
If you do not have documentation, you will still be eligible to self-certify your time spent remedying issues relating to the Wendy's data breach at $15 per hour for up to 2 hours.

The total amount for both Documented Losses and Time and Self-Certifying Time is capped at $5,000 per claimant.

*In re: Wendy's Data Security Breach Litigation,*
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

1. Did you use a credit or debit card at an affected Wendy's location during the exposure window for that particular location (<u>click here to see a list of locations and exposure windows</u>)?

   <u>Yes</u> ☐ (*Proceed to Question 2*) <u>No</u> ☐ (*You are not eligible to submit a claim*)

2. What is the restaurant number of the Wendy's location where you made your purchase? (list up to three)

   (<u>click here to see a list of locations and restaurant number</u>)

   ___  ___  ___  ___

   ___  ___  ___  ___

   ___  ___  ___  ___

3. Do you have proof of your purchase using a credit or debit card at an affected Wendy's location during the exposure window? (*Examples: purchase receipt, credit card statement, bank statement*)

   <u>Yes</u> ☐ (*Proceed to Question 4*) <u>No</u> ☐ (*You are not eligible to submit a claim*)

**<u>DOCUMENTED CLAIMS FOR OUT-OF-POCKET LOSSES, UNREIMBURSED CHARGES, OR TIME SPENT REMEDYING ISSUES RELATING TO THE DATA BREACH</u>**

4. Do you have documents supporting that you experienced out-of-pocket losses, unreimbursed charges, or time spent remedying issues relating to the Wendy's data breach? You may submit a claim, with supporting documentation, for up to $5,000 in out-of-pocket losses, unreimbursed charges, or time spent remedying issues related to the Wendy's data breach.

   <u>Yes</u> ☐ (*Proceed to the chart below*) <u>No</u> ☐ (*skip to Question No. 5*)

*In re: Wendy's Data Security Breach Litigation,*
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Costs and expenses spent addressing identity theft or fraud as a result of Wendy's data breach | | | *Examples: Receipt or account statement reflecting fuel costs for driving to bank or filing police report; Receipt for hiring service to assist you in addressing identity theft* |
| ☐ Losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees) as a result the Wendy's data breach | | | *Examples: Account statement with ATM withdrawal fee highlighted; Loan agreement or bank statement with additional interest paid highlighted* |
| ☐ Preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review as a result the Wendy's data breach | | | *Example: Receipts or account statements reflecting purchases made for credit monitoring services or to place a credit freeze* |
| ☐ Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees as a result of the Wendy's data breach | | | *Example: Account statements reflecting overdraft fees* |

*In re: Wendy's Data Security Breach Litigation,*
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

| | | | |
|---|---|---|---|
| ☐ <u>Documented</u> time spent remedying issues relating to the Wendy's data breach | | **Number of Hours Spent** _____ <br><br> (max = 5 hours) | *Example*: *Phone bill reflecting time spent on phone with bank. You may make a claim for up to 5 hours of <u>documented</u> time at $15 per hour.* |
| ☐ Unauthorized charges on credit or debit card reasonably caused by the Wendy's data breach that were not reimbursed or other fraud losses reasonably caused by the Wendy's data breach | | | The following is required to recover for this category of loses: (1) a copy of the statements that show the fraudulent charges, and (2) correspondence from financial institution declining to reimburse you the charges.  If you do not have written correspondence, provide in writing the approximate date that you reported and to whom you reported the fraudulent charge. |
| ☐ Other (provide detailed description) | | | *Please provide detailed description and supporting documentation* |

*In re: Wendy's Data Security Breach Litigation*,
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

**SELF-CERTIFIED CLAIMS FOR TIME**

5. Did you spend time or additional time other than what is documented above remedying issues relating to the Wendy's data breach? *You may make a claim for up to 2 hours of <u>undocumented</u> time at $15 per hour.*

   <u>Yes</u> ☐ (*Please fill out the statement below*) <u>No</u> ☐ (*skip to Question No. 6*)

   I spent (up to two) _____ hours addressing the repercussions of the Wendy's data breach to be reimbursed at a rate of $15 per hour.

**ATTESTATION AND SIGNATURE**

I do hereby swear (or affirm), under penalty of perjury, that the information provided above is true and accurate to the best of my knowledge and that the compensation I am claiming is based on losses I reasonably believe to the best of my knowledge were the result of the Wendy's data breach.

Name: _____

Signature: _____

Date: _____

# EXHIBIT B - PUBLICATION NOTICE

<u>**LEGAL NOTICE**</u>

# If you used a credit, debit, or other payment card at certain Wendy's branded restaurants between October 25, 2015 and June 28, 2016, you may be eligible for a cash payment from a data breach class action settlement.

A Settlement has been reached with Wendy's International, LLC ("Wendy's") in a class action lawsuit about a data breach that occurred at certain of Wendy's independently owned and operated franchisee restaurants between October 25, 2015 and June 28, 2016 ("Data Breach"). The Settlement will pay people whose "Personal Information" was compromised as a result of the Data Breach and who incurred reimbursable losses as described in the Claim Form. Personal Information means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and it also includes names, addresses, payment card numbers, expiration dates, security and service codes, and any other payment card related information.

The United States District Court for the Middle District of Florida authorized this notice in the case, known as *Torres v. Wendy's International, LLC*, Case No. 6:16-cv-210-PGB-DAB.

Go to www.XXXXX.com for additional Settlement information, including a list of affected Wendy's restaurants and the exposure dates for each impacted location.

## WHAT IS THIS ABOUT?

The lawsuit claims that Wendy's was responsible for the Data Breach. Wendy's denies all of the claims and says it did not do anything wrong. The Court did not decide in favor of either side. Instead, both sides agreed to a settlement. This Settlement is not an admission of wrong-doing or an indication that any law was violated.

## WHO IS INCLUDED?

You are included in the Settlement if you reside in the United States, your Personal Information was compromised as a result of the Data Breach ("Settlement Class Members").

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides two types of payments to people who submit valid claims. You may submit a claim for either or both types of payments.

(1) Reimbursement of up to $5,000 for certain documented unreimbursed out-of-pocket expenses and lost time that resulted from the Data Breach.

(2) Reimbursement for non-documented time spent dealing with the repercussions of the Data Breach for up to 2 hours at $15/hour ($30 total).

Wendy's will pay up to $3.4 million to settle the lawsuit. Court-awarded attorneys' fees, costs and expenses, and service awards to the Representative Plaintiffs will be deducted from the $3.4 million prior to making payments to Settlement Class Members who submit valid Claim Forms.

## HOW DO YOU GET A PAYMENT?

To get a payment you must submit a Claim Form by **Month Day, Year**. Claim Form are available at www.XXXXX.com or by calling XXXXXXX.

## WHAT ARE YOUR OPTIONS?

If you do not want to be legally bound by the Settlement, you must exclude yourself from it by **Month Day, Year**, or you will not be able to sue, or continue to sue, Wendy's about the legal claims this Settlement resolves. If you exclude yourself, you cannot get money from the Settlement.

If you stay in the Settlement Class, you can tell the Court that you do not agree with the Settlement or some part of it by objecting to it by **Month Day, Year**.

The Long Notice available at www.XXXXX.com explains how to exclude yourself or object and describes the released claims in detail.

## WHO REPRESENTS YOU?

The Court appointed John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Counsel and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm as Class Counsel to represent the Settlement Class. Class Counsel will ask the Court for an award for attorneys' fees of $1,020,000, plus reasonable costs and expenses, and service awards up to $5,000 each for the Representative Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas. If you want to be represented by your own lawyer, you may hire one at your own expense.

## WHEN WILL THE SETTLEMENT BE APPROVED?

The Court will hold a hearing on **Month Day, Year**, at **TIME** to consider whether to approve the Settlement, and Class Counsel's request for attorneys' fees, costs and expenses, and service awards. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you do not have to.

## WANT MORE INFORMATION?

Visit <u>www.XXXXX.com</u> or call XXXXXXX.

# EXHIBIT C - LONG FORM NOTICE

**NOTICE OF CLASS ACTION SETTLEMENT**

<u>MIDDLE DISTRICT OF FLORIDA</u>

*In re: Wendy's Data Security Breach Litigation*,
Case No. 6:16-cv-210-PGB-DAB (M.D. Fla.)

# If you used a credit, debit, or other payment card at certain Wendy's branded restaurants between October 25, 2015 and June 28, 2016, you may be eligible for a cash payment from a data breach class action settlement.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached with Wendy's International, LLC ("Wendy's") in a class action lawsuit asserting claims against Wendy's relating to a data security incident that occurred between October 25, 2015 and June 28, 2016, and arising out of third-party criminal attacks on the point of sale systems of certain of Wendy's independently owned and operated franchisee restaurants involving malware that targeted customer payment card related information (the "Data Breach"). Wendy's denies all of the claims. The Settlement does not establish who is correct and is not an admission of fault, but rather is a compromise to end the lawsuit.

- In February 2016, Wendy's first reported that unusual payment card activity had affected some franchisee restaurants and that malware had been discovered on certain systems. The malware used in the Data Breach gathered data such as name, card number, expiration date, security and service codes, and other payment card-related information.

- For a list of impacted Wendy's franchisee restaurants and the exposure window of the Data Breach for each impacted location, go to www.XXXXXXX.com [LINK]. No Wendy's owned locations were affected by the Data Breach, and not all Wendy's franchisee restaurant locations were affected by the Data Breach; only certain restaurants were impacted and at various times.

- The Settlement includes all residents of the United States whose "Personal Information" was compromised as a result of the Data Breach. Personal Information means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and it also includes names, addresses, payment card numbers, expiration dates, security and service codes, and any other payment card related information.

- The Settlement provides payments to people who submit valid claims for certain documented unreimbursed out-of-pocket expenses and lost time that resulted from the Data Breach.

**Your legal rights are affected even if you do nothing. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **Submit a Claim** | This is the only way to receive a payment for losses suffered as a result of the Data Breach. |
| **Ask to be Excluded** | You will not receive a payment, but you will retain any rights you currently have with respect to Wendy's and the issues in this case. This is the only option that allows you to bring your own lawsuit against Wendy's related to the Data Breach. |
| **Object** | Write to the Court about why you do not like the Settlement. |
| **Go to the Hearing** | Ask to speak in Court about the fairness of the Settlement. |
| **Do Nothing** | Get no payment. Give up rights to submit a claim or bring a different lawsuit against Wendy's related to the Data Breach. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will only be made after the Court grants final approval of the Settlement and after any appeals are resolved.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...............................................................................Page 4
1. Why was this Notice issued?
2. What is this lawsuit about?
3. Why is this lawsuit a class action?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ..............................................................Page 5
5. How do I know if I am included in the Settlement?
6. What if I am not sure whether I am included in the Settlement?

**SETTLEMENT BENEFITS–WHAT YOU GET IF YOU QUALIFY** ..........................Page 5
7. What does the Settlement provide?
8. What payments are available for Document Expense Reimbursement?
9. What payments are available for Undocumented Time Spent?

**HOW DO YOU SUBMIT A CLAIM?** ...........................................................Page 6
10. How do I get a payment?
11. How will claims be decided?
12. When will I get my payment?

**WHAT DOES WENDY'S GET?** ................................................................Page 7
13. What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .......................................Page 7

14. If I exclude myself, can I get a payment from this Settlement?
15. If I do not exclude myself, can I sue Wendy's for the same thing later?
16. How do I exclude myself from the Settlement?

**OBJECTING TO THE SETTLEMENT** ..........................................................Page 8
17. How do I tell the Court that I do not like the Settlement?
18. What is the difference between objecting and asking to be excluded?

**THE LAWYERS REPRESENTING YOU** ......................................................Page 9
19. Do I have a lawyer in this case?
20. How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING** .......................................................Page 10
21. When and where will the Court decide whether to approve the Settlement?
22. Do I have to attend the hearing?
23. May I speak at the hearing?

**IF YOU DO NOTHING** .........................................................................Page 10
24. What happens if I do nothing?

**GETTING MORE INFORMATION** ..............................................................Page 11
25. How do I get more information?

**Questions? Call 1-XXX-XXX-XXXX**

# BASIC INFORMATION

## 1. Why was this Notice issued and why should I read it?

The Court authorized this notice because you may be included in the settlement class and have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement. This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the Settlement.

Judge Paul G. Byron of the United States District Court for the Middle District of Florida is overseeing this case known as *Torres v. Wendy's International, LLC,* Case No. 6:16-cv-00210-PGB-DCI. The people who sued are called the Plaintiffs. Wendy's is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claims that Wendy's was responsible for the Data Breach and asserts claims such as: breach of implied contract, negligence, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of the New York Business Law, N.Y. Gen. Bus. Law §§ 349 et seq., violation of the Tennessee Consumer Protection, Tenn. Code Ann. §§ 47-18-101 et seq., violation of the New Jersey Consumer Fraud Act, violation of the Texas Deceptive Trade Practices – Consumer Protection Act.

Wendy's denies these claims and says it did not do anything wrong. The restaurants affected by the breach were independently owned by franchisees and were not owned or controlled by Wendy's itself.

## 3. Why is this lawsuit a class action?

In a class action, one or more people called class representatives or representative plaintiffs sue on behalf of all people who have similar claims. Together, all of these people are called a class and the individuals are called class members. One court resolves the issues for all class members, except for those who exclude themselves from the class. Here, the Representative Plaintiffs—Christine Jackson, Ashley McConnell, and Gerald Thomas—sued on behalf of a class of all customers of Wendy's franchisee restaurants whose Personal Information was compromised as a result of the Data Breach.

## 4. Why is there a Settlement?

The Court did not issue a ruling in favor of the Plaintiffs or Wendy's. Rather, both sides, with the assistance of a mediator, agreed to a settlement. The Settlement is not an admission that Wendy's did something wrong, but rather is a compromise to end the lawsuit. By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will get compensation. The Representative Plaintiffs and their attorneys believe the Settlement is fair, reasonable, and adequate and, thus, best for the Settlement Class.

# WHO IS IN THE SETTLEMENT?

| **5. How do I know if I am included in the Settlement?** |
| --- |

You are included in the Settlement if you reside in the United States and your Personal Information was compromised as a result of the Data Breach.

Specifically excluded from the Settlement Class are:

(i) Wendy's and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge or Magistrate Judge to whom the Action is assigned and, any member of those Judges' staffs or immediate family members; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge.

| **6. What if I am not sure whether I am included in the Settlement?** |
| --- |

The Settlement website at [LINK] provides a list of affected Wendy's franchisee restaurant locations and the time period during which customers at that particular location may have had their Personal Information compromised. If you are not sure whether you are included in the Settlement, you may call 1-XXX-XXX-XXXX with questions. You may also write with questions to Wendy's Settlement Administrator, PO Box XXXX, [City], [State] XXXXX-XXXX.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| **7. What does the Settlement provide?** |
| --- |

The Settlement will provide cash payments to people who submit valid claims.

There are two types of payments that are available: (1) Documented Expense Reimbursement (Question 8) and (2) Undocumented Time Spent (Question 9). The aggregate total amount that any Settlement Class Member may receive in reimbursement for these two types of payments will not exceed $5,000.

You may submit a claim for either or both types of payments. In order receive payment, you must submit a Claim Form with the required documentation.

| **8. What payments are available for Documented Expense Reimbursement?** |
| --- |

Settlement Class Members are eligible to receive reimbursement of up to $5,000 (in total) for unreimbursed out-of-pocket expenses resulting from the Data Breach, such as:

- costs and expenses spent addressing identity theft or fraud;
- losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees);
- preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review;

- late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees;

- unauthorized charges on credit or debit cards that were not reimbursed

- other documented losses that were not reimbursed; and

- up to five hours of <u>documented</u> time spent remedying issues relating the Data Breach (calculated at the rate of $15.00 per hour).

## 9. What payments are available for Undocumented Time Spent?

Settlement Class Members who spent time and effort dealing with repercussions of the Data Breach, but do not have documentation of such time and effort, are eligible to submit a Claim Form for time spent in an amount of $15 per hour up to two hours ($30 total).

# HOW DO YOU SUBMIT A CLAIM?

## 10. How do I get a payment?

To receive a payment, you must complete and submit a Claim Form. Claim Forms are available at [LINK] or by calling 1-XXX-XXX-XXXX. Read the instructions carefully, fill out the Claim Form, provide the required documentation, and submit it online or mail it postmarked no later than **Month Day, Year** to:

Wendy's Data Breach Claim Forms
PO Box XXXXX
[City], [State] XXXXX-XXXX

## 11. How will claims be decided?

The Settlement Administrator will initially decide whether the information provided on each Claim Form is complete and valid. The Settlement Administrator may require additional information. If you do not provide the additional information in a timely manner the claim will be considered invalid and will not be paid.

Approved Claims are those submitted in a timely manner and found to be valid by and in an amount approved by the Settlement Administrator.

Wendy's payments under the Settlement for (1) Approved Claims and (2) any Court-awarded attorneys' fees, and costs and expenses and service awards are capped at $3,400,000 in total. If, after deducting the court-awarded attorneys' fees, costs, and expenses, and service awards the amount of Approved Claims is more than the balance remaining in the capped total, then each individual Approved Claim amount will be reduced in a *pro rata* (proportionate) amount. If, after deducting the court-awarded attorneys' fees, costs, and expenses, and service awards, the amount of Approved Claims is less than the balance remaining in the capped total, then Wendy's will keep the balance.

## 12.  When will I get my payment?

The Court will hold a hearing on **Month Day, Year** to decide whether to approve the Settlement. If the Court approves the Settlement after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. It also takes time for all the Claim Forms to be processed. Please be patient.

# WHAT DOES WENDY'S GET?

## 13.  What am I giving up as part of the Settlement?

If the Settlement becomes final and you do not exclude yourself from the Settlement, you will remain a Settlement Class Member and you will give up your right to sue Wendy's and Released Persons for any Released Claims arising out of or relating to the Data Breach. The specific claims being released are described below and in the "Release" section (§ VII) of the Settlement Agreement. In the Release, the Data Breach is referred to as the Security Incident. Capitalized terms in the Release below are defined in the Settlement Agreement. If you have any questions you can talk to the law firms listed in Question 19 for free or you can, of course, talk to your own lawyer.

### Plaintiffs' Release

**Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum in which any of the Released Claims are asserted.**

**It is the intent of the Parties that this Release shall not be considered, interpreted, or construed to prevent Settlement Class Members from pursuing claims related to the Security Incident against any person who is not a Released Person.**

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this Settlement, but you want to keep the right to sue Wendy's about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

## 14.  If I exclude myself, can I get a payment from this Settlement?

No. If you exclude yourself, you will not be entitled to any money from the Settlement, but you will not be bound by any judgment in this case.

### 15.  If I do not exclude myself, can I sue Wendy's for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Wendy's (and the Released Persons) for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form to ask for a payment.

If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this class action, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitations or repose.

### 16.  How do I exclude myself from the Settlement?

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *Torres v. Wendy's International, LLC,* Case No. 6:16-cv-00210-PGB-DCI. Include your name, address, and signature. You must mail your exclusion request postmarked by **Month Day, Year**, to:

Wendy's Data Breach Settlement Exclusions
PO Box XXXXX
City, State XXXXX

# OBJECTING TO THE SETTLEMENT

### 17.  How do I tell the Court that I do not like the Settlement?

You can tell the Court that you do not agree with the Settlement or some part of it by objecting to the Settlement. The Court will consider your views in its decision to approve the Settlement. To object, you must file a written objection in this case, *Torres v. Wendy's International, LLC,* Case No. 6:16-cv-00210-PGB-DCI, with the Clerk of the Court, and mail copies to Class Counsel and Defense Counsel at the addresses below.

Your objection must state: (1) your full name, address, telephone number, and e-mail address (if any); (2) information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable; (4) the identity of all counsel representing you; (5) the identity of all counsel representing you who will appear at the final fairness hearing; (6) a list of all persons who will be called to testify at the final fairness hearing in support of the objection; (7) a statement confirming whether you intend to personally appear and/or testify at the final fairness hearing; (8) your signature and the signature of your duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if applicable; (9) a list, by case name, court, and docket number, of all other cases in which you (directly or through counsel) have filed an objection to any proposed class action settlement within the last 3 years; (10) a list, by case name, court, and docket number, of all other cases in which your counsel (on behalf of any person or entity) has filed an objection to any

proposed class action settlement within the last 3 years; and (11) a list, by case name, court, and docket number, of all other cases in which you have been a named plaintiff in any class action or served as a lead plaintiff or class representative.

To be considered, your objection must be **filed** with the Clerk of the Court for the United States District Court for the Middle District of Florida no later than **Month Day, Year**. In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel, postmarked no later than **Month Day, Year**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>401 West Central Boulevard<br>Orlando, FL 32801 | John A. Yanchunis<br>Morgan & Morgan Complex<br>Litigation Group<br>One Tampa City Center<br>201 N. Franklin Street<br>7th Floor<br>Tampa, FL 33602 | Donald M. Houser<br>Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, GA 30309-3424 |

## 18. What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved. You can object only if you are a member of the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and do not want to receive any payment from the Settlement. If you exclude yourself, you have no basis to object because you are no longer a member of the Settlement Class and the case no longer affects you.

# THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in this case?

Yes. The Court appointed John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Counsel. The Court also appointed the following attorneys as Class Counsel to represent the Settlement Class: Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 20. How will the lawyers be paid?

Class Counsel will ask the Court for an award for attorneys' fees of $1,020,000, plus reasonable costs and expenses. Any award for attorneys' fees, plus reasonable costs and expenses, would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement and will be the only payment to them for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Class Counsel will also ask the Court for a service awards up to $5,000 each for the Representative Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas.

**Questions? Call 1-XXX-XXX-XXXX**

Any award for attorneys' fees, costs and expenses for Class Counsel, and service awards to the Representative Plaintiffs must be approved by the Court. The Court may award less than the amounts requested. If approved, these amounts will be deducted from the $3,400,000 capped total settlement amount prior to making payments to Settlement Class Members who submit valid Claim Forms. Class Counsel's papers in support of final approval of the Settlement and their application for attorneys' fees, costs and expenses, and service awards will be filed no later than **Month Day, Year** and will be posted on the settlement website.

# THE COURT'S FAIRNESS HEARING

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a final fairness hearing at __:__ _.m. on **Month Day, Year**, at the George C. Young Federal Annex Courthouse, Courtroom 4B, 401 West Central Boulevard, Orlando, Florida 32801. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Representative Plaintiffs. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX.

## 22. Do I have to attend the hearing?

No. Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 17, the Court will consider it.

## 23. May I speak at the hearing?

You may ask the Court for permission to speak at the final fairness hearing. To do so, you must file an objection according to the instructions in Question 17, including all the information required. Your objection must be **filed** with the Clerk of the Court for the United States District Court for the Middle District of Florida (Orlando Division) no later than **Month Day, Year**. In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel listed in Question 17, postmarked no later than **Month Day, Year.**

# IF YOU DO NOTHING

## 24. What happens if I do nothing?

If you do nothing, you will not get any money from this Settlement and after the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit,

continue with a lawsuit, or be part of any other lawsuit against Wendy's and the other Released Persons about the Data Breach, ever again.

# GETTING MORE INFORMATION

| **25. How do I get more information?** |
| --- |

This Notice summarizes the proposed Settlement. More details are in a Settlement Agreement. A copy of the Settlement Agreement is available at [LINK]. You may also call the Settlement Administrator with questions or to get a Claim Form at 1-XXX-XXX-XXXX.

# EXHIBIT D - NOTICE PLAN

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| Jonathan Torres, Christine Jackson, Donald Jackson, Ashley McConnell, Roxanne Gant, and Gerald Thomas, individually and on behalf of all others similarly situated, | Case No.  6:16-cv-210-PGB-DCI |
| Plaintiffs, | **DECLARATION OF CARLA PEAK REGARDING SETTLEMENT NOTICE PLAN** |
| v. | |
| Wendy's International LLC, | |
| Defendant. | |

I, Carla Peak, declare as follows:

1.      I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

### INTRODUCTION

2.      I am the Vice President of Legal Notification Services at KCC, LLC ("KCC"). KCC is a leading class action administration firm that provides comprehensive class action services, including legal notification, email and postal mailing, campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements.

3.      With more than thirty years of industry experience,[1] KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This declaration combines the class action notice and administration experience of both firms.

mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

4.     KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of consumer product and data matters. Some consumer case examples which KCC has been involved with include: *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-01364 (N.D. Ill.); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.); *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, No. 1:06-cv-07023 (N.D. Ill.); *Edwards v. National Milk Producers Federation*, No. 11-cv-04766 (N.D. Cal.); *Lerma v. Schiff Nutrition International, Inc.*, No. 1:13-CV-07747 (N.D. Ill.); *Cobb v. BSH Home Appliances Corp.*, No. 8:10-CV-00711 (C.D. Cal.); *Roberts v. Electrolux Home Products, Inc.*, No. 8:12-CV-01644 (C.D. Cal.); *Cappalli v. BJ's Wholesale Club, Inc.*, No. 1:10-CV-00407 (D. R.I.); *Stroud v. eMachines, Inc.*, No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.); and *Shames v. The Hertz Corporation*, No. 07cv2174-MMA (S.D. Cal.).

## CLASS TARGET

5.     The Settlement Class consists of all residents of the United States whose Personal Information was compromised as a result of the Security Incident.  The Settlement Class specifically excludes: (i) Wendy's and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the

criminal activity or occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

6. To verify the notice program's effectiveness, GfK MediaMark Research & Intelligence, LLC (MRI)[2] data was studied among adults who use Wendy's restaurants and have used a credit/debit card in the last 12 months ("Wendy's Debit/Credit Consumers").

7. Knowing the characteristics, demographics, interests, and media habits of a target group aids in the media planning and selection process. Demographic highlights of likely Class members include: 98.9% speak English most often; 93.0% have graduated from high school and 67.2% have attended college; 87.0% are 25 years of age or older, 72.3% are 25-64 years of age, and 67.9% are 35 years of age or older; 86.6% have a household income of $30,000 or more, 79.4% have a household income of $40,000 or more, and 72.5% have a household income of $50,000 or more; 86.2% live in a Metropolitan CBSA;[3] and 83.0% are white.

8. On average, likely Class members:[4] are 45 years of age; have a household income of $92,967; and own a home valued at $262,940.

---

[2] GfK MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

[3] Core Based Statistical Areas (CBSAs) consist of the county or counties or equivalent entities associated with at least one core (urbanized area or urban cluster) of at least 10,000 population, plus adjacent counties having a high degree of social and economic integration with the core as measured through commuting ties with the counties associated with the core. The general concept of a CBSA is that of a core area containing a substantial population nucleus, together with adjacent communities having a high degree of economic and social integration with that core. CBSAs are defined by the U.S. Office of Management and Budget to provide a nationally consistent set of geographic entities for the United States and Puerto Rico for use in tabulating and presenting statistical data. Metropolitan Statistical Areas are CBSAs associated with at least one urbanized area that has a population of at least 50,000. The metropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting. Micropolitan Statistical Areas are CBSAs associated with at least one urban cluster that has a population of at least 10,000 but less than 50,000. The micropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting.

[4] The average age for U.S. adults is 47 and the average household income is $78,940.

3

9.      Compared to the general adult population, likely Class members are: 30.1% more likely to have a household income between $100,000-$149,999, 23.1% more likely to have a household income between $75,000-$99,999, and 20.4% more likely to have a household income of $60,000 or more;  18.1% more likely to live in the Midwest Census Region; 17.2% more likely to be 35-44 years of age, 9.9% more likely to be 18-49 years of age, and 8.1% more likely to be 45-54 years of age; and 10.2% more likely to be white.

10.     Media usage among likely Class members includes: 66.7% are considered to be moderate to heavy consumers of internet media; and 63.1% are considered to be moderate to heavy consumers of magazine media.

## NOTICE PLAN ELEMENTS

11.     The proposed Notice Plan utilizes a combination of paid notice in leading consumer magazines and paid online advertising, as well as a notice on Wendy's website.

12.     A Summary Notice will appear as an approximate third-page ad unit once in *Country Living*, *ESPN The Magazine*, and *People*. The Notice will appear in both the print publications, as well as their online digital replicas.

13.     *Country Living* has a circulation of 1,380,879 with approximately 11,934,000 readers. It is a monthly home magazine covering design, food, pets, gardening, and how-tos focusing on "small-town community" living. *ESPN The Magazine* has a circulation of 2,131,108 with approximately 18,272,000 readers. It is a bi-weekly sports magazine providing feature access to athletes and sports. *People* magazine has a circulation of 3,411,860 with approximately 41,353,000 readers. It is a weekly entertainment magazine that features celebrity news, biographies and gossip.

14.     According to MRI data, 93.2% of likely Class members have access to the internet at home using a computer; 91.6% have looked at or used the internet in the last 30 days; 86.7% have used Google.com in the last 30 days; 81.8% have used their cellphone or smartphone to look at or use the internet in the last 30 days; and 69.3% have visited Facebook in the last 30 days.

15.     KCC will implement a paid nationwide online advertising campaign consisting of internet banners on the Google Display Network and Yahoo! audience network, as well as the social media site Facebook. Approximately 169.5 million impressions[5] will be generated. The impressions will be targeted to likely Class members and will be delivered on both desktop and mobile devices, including tablets and smartphones. The online ads will include an embedded link to the case website. Conversion tracking will be used to monitor online behavior, as well as track and retarget likely Class members who file a claim or stop midway through the process.

16.     The Google Display Network is a vast ad network that reaches over 90% of Internet users and harnesses the power of advertising opportunities to over two million websites, including some of the most-visited websites and most recognizable properties on the entire internet.

17.     Yahoo! is an Internet portal that incorporates a search engine and a directory of websites organized in a hierarchy of topic categories. The directory provides users with a structured view of hundreds of thousands of websites and millions of webpages. It also provides one of the best ways to search the internet for a given topic.

18.     Facebook is the largest social media platform in terms of both audience size and engagement, with the capability of reaching millions of users daily.

19.     The digital media campaign will be routinely monitored by KCC's digital specialists to analyze key campaign performance indicators (KPIs), such as click-through rates (CTRs) and costs per action (CPAs). This knowledge will be leveraged to allocate placements to sites that have demonstrated successful KPIs throughout the duration of the campaign.

20.     Wendy's will post a link to the settlement website accessible through the "Payment Card Incident" link on its website, www.Wendys.com, for the entire Claims Period.

---

[5] "Impressions" are the total number of opportunities to be exposed to a media vehicle or vehicles containing a notice.

21.     KCC will create and maintain an informational case website that will allow Class members to obtain additional information and documents about the litigation, as well as file a claim online.

22.     The website address will be accessible through a hyperlink embedded in the online notices, as well as displayed in the magazine notices.

23.     KCC will host and maintain an automated toll-free number that will allow Class members to learn more about the litigation in the form of frequently asked questions and answers, as well as request to have additional information mailed directly to them.  The toll-free number will be displayed in the magazine notices.

## CONCLUSION

24.     The Notice Plan is expected to reach approximately 70% of likely Class members on average 1.9 times each via the paid notification methods described above. Exposure with be further enhanced by the website link posted on Wendy's website. The reach of the Notice Program is consistent with other effective court-approved notice programs and meets due process.

25.     At the conclusion of the Notice Plan, KCC will provide a final report verifying its adequacy and effective implementation.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 24th day of July, 2018.


_____
Carla Peak

# EXHIBIT E - PROPOSED ORDER ON PRELIMINARY APPROVAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTINE JACKSON, DONALD JACKSON, ASHLEY MCCONNELL, and GERALD THOMAS, individually and on behalf of all others similarly situated, | CASE NO.: 6:16-cv-210-Orl-40DAB |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | |
| WENDY'S INTERNATIONAL LLC, | |
| Defendant. | |

**[PROPOSED] ORDER CERTIFYING A SETTLEMENT CLASS,
PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
AND DIRECTING NOTICE TO THE SETTLEMENT CLASS**

This matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class.

Plaintiffs commenced this action against Wendy's International, LLC on February 8, 2016. In the Second Amended Complaint filed on April 3, 2017, Plaintiffs asserted claims for breach of implied contract, negligence, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of the New York Business Law, violation of the Tennessee Consumer Protection Act, violation of New Jersey Consumer Fraud Act, and violation of Texas Deceptive Trade Practice Act.

The Parties, through their counsel, have entered into a Settlement Agreement following good faith, arm's-length negotiations and a mediation overseen by David Lichter and ensuing settlement negotiations between the Parties. The Parties have agreed to settle this action,

pursuant to the terms of the Settlement Agreement, and subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy of the settlement which, if approved, will result in dismissal of this action with prejudice.

Having reviewed the Settlement Agreement (ECF __), including the exhibits attached thereto (together, the "Settlement Agreement" or "Settlement"), and all prior proceedings herein, and for good cause shown, it is hereby ordered that Plaintiff's Motion for Preliminary Approval is granted as set forth herein.[1]

1.      **Class Certification for Settlement Purposes Only.**   For settlement purposes only and pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e), the Court provisionally certifies a class in this matter defined as follows:

> All residents of the United States whose Personal Information was compromised as a result of the Security Incident.

The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Representative Plaintiffs are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Representative Plaintiffs and Lead Counsel and Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Representative Plaintiffs have no interest antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate

---

[1]  Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

   **2.**  **Representative Plaintiffs and Settlement Class Counsel.**

   Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas are hereby provisionally designated and appointed as the Representative Plaintiffs. The Court provisionally finds that the Representative Plaintiffs are similarly situated to absent Settlement Class Members and therefore typical of the Settlement Class and that they will be adequate Representative Plaintiffs.

   The Court finds that the following counsel are experienced and adequate counsel and are hereby provisionally designated as "Settlement Class Counsel" pursuant to Federal Rule of Civil Procedure 23(g): John A. Yanchunis from Morgan & Morgan Complex Litigation Group as Lead Counsel and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm as Class Counsel.

   **3.**  **Preliminary Settlement Approval.** Upon preliminary review, the Court finds that the proposed Settlement is fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class and accordingly is preliminarily approved.

   **4.**  **Jurisdiction.** The Court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 332(d)(2), and personal jurisdiction over the Parties before it for the purposes of the Settlement. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

   **5.**  **Final Approval Hearing.** A Final Approval Hearing shall be held on _____ at _____ in Courtroom 4B of the George C. Young Federal Annex Courthouse, 401 West Central

Boulevard, Orlando, Florida 32801, to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e); (b) the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e); (c) the action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the motion of Class Counsel for an award of attorneys' fees and  costs and expenses  should be approved  pursuant  to  Federal  Rule  of  Civil  Procedure  23(h);  and  (f)  the  motion   of Representative Plaintiffs for Service Awards  should be approved.

The Parties will cause to be filed with the Court their briefs in support of final approval, attorneys' fees, costs, and expenses, and incentive awards, including responses to any objections, no later than fourteen (14) days before the Final Approval Hearing. No later than fourteen (14) days before the Final Approval Hearing, Defendant shall file with the Court a certification that it complied with the CAFA Notice requirements and stating the date of such compliance.

6. **Administration.**   The Court appoints KCC Class Action Services, LLC as the Settlement  Administrator,  with  responsibility  for  class  notice  and  claims  administration. Defendant shall pay all related costs and expenses associated with the Costs of Settlement Administration.   These payments to the Settlement Administrator shall be made separate and apart from the relief being made available to Settlement Class Members under the Settlement.

7. **Notice to the Class.**  The proposed Notice Program set forth in the Settlement Agreement, and the Claim Form, Publication Notice, and Long Form Notice attached to the Settlement Agreement as Exhibits A, B, and C, respectively, satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and (e)(1) and are hereby approved.   Non-material

modifications to these Exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement Agreement.

By 30 days from the date of this Order, the Settlement Administrator shall initiate the Notice Program, which shall be completed in the manner set forth in the Settlement Agreement.

8.    **Findings and Conclusions Concerning Notice.**   The Court finds that the form, content, and method of giving notice to the Settlement Class as described in Paragraph 7 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and the Court concludes that the  notice program meets all applicable requirements of law, including Federal Rule of Civil Procedure 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.   The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

9.    **Class Action Fairness Act Notice.**   Defendant shall provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1715.  No later than fourteen (14) Days before the Final Approval Hearing, Defendant shall file with the Court a certification that it complied with the CAFA Notice requirements and stating the date of such compliance.

10.     **Exclusion from Class.**  Any Settlement Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator.  The written opt out notice must clearly manifest a person's intent to be excluded from the Settlement Class.  The written opt out notice must include the individual's name and address; a statement that he or she wants to be excluded from the Settlement Class; and the individual's signature. The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing.  To be effective, written opt out notice must be postmarked no later than 120 days after the date of this Order.

All persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement.   All persons falling within the definition of the Settlement Class who do not submit valid and timely notices of their intent to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Judgment entered thereon.

11.     **Objections and Appearances.**  A Settlement Class Member who complies with the requirements of this paragraph may object to the Settlement, the request for costs, expenses, service awards, and/or attorneys' fees.

Any Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection ("Objection").   Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a

6

member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the final fairness hearing; (vi) a list of all persons who will be called to testify at the final fairness hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the final fairness hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than 120 days from the date of this Order (the "Objection Deadline"), and served concurrently therewith upon Lead Counsel, John A. Yanchunis, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, FL 33602; and counsel for Wendy's, Donald M. Houser, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, GA 30309.

Any Settlement Class Member who fails to timely file and serve a written objection and notice of his or her intent to appear at the Final Approval Hearing pursuant to the Settlement

Agreement, as detailed in the Long-Form Notice, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means. Any objecting Settlement Class Member who appeals a grant of the final Judgment will be required to post an appeal bond.

Any Settlement Class Member who does not submit a timely objection in complete accordance with the Settlement Agreement and this Order shall not be treated as having filed a valid objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

12. **Claims Process and Distribution and Allocation Plan.** Representative Plaintiffs and Wendy's have created a process for assessing and determining the validity and value of claims and a payment methodology to Settlement Class Members who submit a timely, valid claim form. The Court preliminarily approves the plan for remuneration described in Section II of the Settlement Agreement, and directs that the Settlement Administrator effectuate the distribution of settlement consideration according to the terms of the Settlement Agreement, should the Settlement be finally approved.

Settlement Class Members who qualify for and wish to submit a claim form shall do so in accordance with the requirements and procedures specified in the notice and the Claim Form. If final Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement Agreement, the releases included in that Agreement, and the final Judgment.

13.    **Termination of Settlement.**   This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement.   In such event, the Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

14.    **Use of Order.**   This Order shall be of no force or effect if final Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Wendy's of any fault, wrongdoing, breach, liability, or the certifiability of any class.   Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Representative Plaintiffs or any other Settlement Class Member that his or her claim lacks merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claim he, she, or it may have in this litigation or in any other lawsuit.

15.    **Stay of Proceedings.**   Except as necessary to effectuate this Order, all proceedings and deadlines in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the final Judgment, or until further order of this Court.

16.    **Continuance of Hearing.**   The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Class.   If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

17.    **Summary of Deadlines.**    The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing.    Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

| | | |
|---|---|---|
| **Notice Commences:** | 30 Days from the Preliminary Approval Date | |
| **Opt-Out Deadline:** | 120 Days from the Preliminary Approval Date | |
| **Objection Deadline:** | 120 Days from the Preliminary Approval Date | |
| **Motion for Final Approval:** | 14 Days before the Final Approval Hearing | |
| **Claims Deadline:** | 180 Days after Commencement of the Notice Program | |
| **Motion for Service Awards, Attorneys' Fees and Costs:** | 14 Days before the Final Approval Hearing | |
| **Responses to Objections:** | 14 Days before the Final Approval Hearing | |
| **Final Approval Hearing:** | 180 Days after the Preliminary Approval Date | |

IT IS SO ORDERED this _____ day of _____, 2018.

_____
The Honorable Paul G. Byron
United States District Court Judge

# EXHIBIT F - PROPOSED FINAL APPROVAL ORDER AND JUDGMENT

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **CHRISTINE JACKSON, DONALD JACKSON, ASHLEY MCCONNELL, and GERALD THOMAS, individually and on behalf of all others similarly situated,** | **CASE NO.: 6:16-cv-210-Orl-40DAB** |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **vs.** | |
| **WENDY'S INTERNATIONAL LLC,** | |
| **Defendant.** | |

## [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

On _____**[DATE]**, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") (Doc. ____) of the settlement (the "Settlement Agreement") between Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas, ("Plaintiffs"), on their own behalf and on behalf of the Settlement Class (as defined below), and Defendant Wendy's International, LLC ("Wendy's"), as memorialized in Exhibit __ (Doc. __) to Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class;[1]

On _____**[DATE]**, pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed Settlement Agreement, of the right of Settlement Class Members to

---

[1] The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be indicated.

opt-out, and the right of Settlement Class Members to object to the Settlement Agreement and to be heard at a final approval hearing;

On _____**[DATE]**, the Court held a final approval hearing to determine, inter alia: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether judgment should be entered dismissing this action with prejudice.  Prior to the final approving hearing, a declaration of compliance with the provisions of the Settlement Agreement and Preliminary Approval Order relating to notice was filed with the Court as required by the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the final approval hearing in support of or in opposition to the proposed Settlement Agreement, the award of attorneys' fees and costs to Class Counsel, and the payment of Service Awards to the Representative Plaintiffs.

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for Wendy's, having reviewed all of the submissions presented with respect to the proposed Settlement Agreement, having determined that the Settlement Agreement is fair, adequate, and reasonable, having considered the application made by Class Counsel for attorneys' fees and costs and expenses, and the application for Service Awards to the Representative Plaintiffs, and having reviewed the materials in support thereof, and good cause appearing:

**IT IS HEREBY ORDERED THAT:**

1.      The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class.

2.      The Settlement Agreement was entered into in good faith following arm's length negotiations and is non-collusive.

3.      The Settlement Agreement is, in all respects, fair, reasonable, and adequate, is in the best interests of the Settlement Class, and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays and uncertainties, including as to the outcome, including on appeal, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class Members. The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the settlement reflected in the Settlement Agreement.

4.      This Court grants final approval of the Settlement Agreement, including but not limited to, the releases in the Settlement Agreement, including all Released Claims, and the plans for implementation and distribution of the settlement relief.  The Court finds that the Settlement Agreement is in all respects fair, reasonable, and in the best interest of the Settlement Class. Therefore, all Settlement Class Members who have not opted out are bound by this Final Approval Order and Judgment, approving the Settlement Agreement.

5.      The Parties shall effectuate the Settlement Agreement in accordance with its terms. The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force of an Order of this Court.

## OBJECTIONS AND OPT-OUTS

6.      _____ objections were filed by Settlement Class Members. The Court has considered all objections and finds the objections do not counsel against Settlement Agreement approval, and the objections are hereby overruled in all respects.

7.      All persons who have not objected to the Settlement Agreement in the manner provided in the Settlement Agreement are deemed to have waived any objections by appeal, collateral attack, or otherwise.

8.     A list of those putative Settlement Class Members who have timely and validly elected to opt out of the Settlement Agreement and the Settlement Class (the "Opt-Out Members"), and who therefore are not bound by the Settlement Agreement and this Final Approval Order and Judgment has been submitted to the Court in the Declaration of _____, filed in advance of the final approval hearing.  That list is attached as Exhibit A to this Order.  The Opt-Out Members listed in Exhibit A are not bound by the Settlement Agreement and this Final Approval Order and Judgment and shall not be entitled to any of the benefits afforded to the Settlement Class Members under the Settlement Agreement.

## CLASS CERTIFICATION

9.     For purposes of the Settlement Agreement and this Final Approval Order and Judgment only, the Court hereby finally certifies the following Settlement Class:

> All residents of the United States whose Personal Information was compromised as a result of the Security Incident.

10.     The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of Federal Rule of Civil Procedure 23(a) and (b)(3) set forth in the Preliminary Approval Order and notes again that because this certification of the Settlement Class is in connection with the Settlement Agreement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

11.     The Court grants final approval to the appointment of Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas as Class Representatives.  The Court concludes that the Class Representatives have fairly and adequately represented the Settlement Class and will continue to do so.

12.     The Court grants final approval to the appointment of John A. Yanchunis as Lead Counsel and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group, Jean Sutton Martin of Law Office of Jean Sutton Martin PLLC, Ariana Tadler and Melissa Clark of Milberg Tadler Phillips Grossman LLP, John Emerson of Emerson Scott LLP, and Jeremy Glapion of Glapion Law Firm as Class Counsel. The Court concludes that Lead Counsel and Class Counsel have adequately represented the Settlement Class and will continue to do so.

## NOTICE TO THE CLASS

13.     The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and of their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.

14.     The Court finds that Wendy's has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS

15.     The Court has considered Class Counsel's Motion for Service Awards and for attorneys' fees and costs, and expenses. The Court awards Class Counsel the sum of $_____ as an award of attorneys' fees and $_____ as an award of costs and expenses to be paid in accordance with the Settlement Agreement, and the Court finds this amount of fees and costs to be fair and reasonable.

16.     The Court grants Class Counsel's request for Service Awards to the Class Representatives and awards $5,000 each to Plaintiffs Christine Jackson, Ashley McConnell, and Gerald Thomas. The Court finds that this payment is justified by their service to the Settlement Class. This payment shall be paid in accordance with the Settlement Agreement.

## OTHER PROVISIONS

17.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

18.     Within the time period set forth in the Settlement Agreement, the relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions of the Settlement Agreement.

19.     As of the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, (i) Plaintiffs and each Settlement Class Member who is not an Opt-Out Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, personal representatives, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as parens patriae or on behalf of creditors or estates of the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns, will be deemed to have completely, fully, finally, irrevocably, and forever released, relinquished, and discharged Wendy's International, LLC and the Released Persons from any and all claims, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown, including without limitation,

negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute or common law duty, any federal, state, or local statutory or regulatory claims, including, but not limited to, pursuant to consumer protection laws, unfair and deceptive trade practice laws, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Releasing Persons (including but not limited to any Settlement Class Member) has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Security Incident (including but not limited to the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation and/or Complaint (the "Released Claims"), as provided for in the Settlement Agreement. In addition, upon the Effective Date, Plaintiff and each of the other Settlement Class Members who is not an Opt-Out Member shall be deemed to have waived (a) the provisions of California Civil Code § 1542, which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, must have materially affected his or her settlement with the debtor and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

20.    The terms of the Settlement Agreement and this Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in

any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorney's fees, costs, interest or expenses that arise out of or relate to the allegations or subject matter of the Litigation and/or Complaint.

21.     This Final Approval Order and Judgment and the Settlement Agreement, and all acts, statements, documents or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Wendy's of any claim, any fact alleged in the Action, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Wendy's or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the action. This Final Approval Order and Judgment, the Settlement Agreement, all acts, statements, documents or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any saction or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; *provided*, *however*, that the Settlement Agreement and this Final Approval Order and Judgment may be filed in any action by Wendy's or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order and Judgment (including but not limited to enforce the releases contained herein). The Settlement Agreement and Final Approval Order and Judgment shall not be construed or admissible as an admission by Wendy's that Plaintiff's claims or any similar claims are suitable for class treatment. The Settlement Agreement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Approval Order and Judgment that are maintained by,

or on behalf of, any Settlement Class Member who is not an Opt-Out Member or any other person subject to the provisions of this Final Approval Order and Judgment.

22.     The Court hereby dismisses the Complaint and all claims therein on the merits and with prejudice, without fees or costs to any Party except as provided in this Final Approval Order and Judgment.

23.     Consistent with Paragraph 10.1 of the Settlement Agreement, if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Approval Order and Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties' obligations under the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order and Judgment shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into the Settlement Agreement. In such an event, the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).

24.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

25.     Without affecting the finality of this Final Approval Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**ENTERED:**

DATED: _____, 2018          By: _____
                                              The Honorable Paul G. Byron
                                              United States District Judge