UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JONATHAN TORRES, CHRISTINE JACKSON, DONALD JACKSON, ASHLEY MCCONNELL, ROXANNE GANT, and GERALD THOMAS, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>WENDY'S INTERNATIONAL LLC,<br><br>  Defendant. | CASE NO.: 6:16-cv-210-Orl-40DAB<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF JOHN A. YANCHUNIS IN SUPPORT OF
PLAINTIFFS' UNOPPOSED AMENDED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

I, John A. Yanchunis, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been licensed to practice law in the state of Florida since 1981.

2. I lead the Class Action Department of Morgan & Morgan. Morgan & Morgan is among the largest, if not the largest, exclusively Plaintiff's law firms in the United States, employing over 400 lawyers and 2,000 support staff, who serve consumers in over 50 offices in Alabama, Arkansas, Georgia, Florida, Mississippi, Kentucky, Tennessee, Massachusetts, Pennsylvania and New York.

3. While Morgan & Morgan's Complex Litigation Group draws its expertise from fifteen attorneys supported by skilled paralegals, retired FBI agents who work in the department as investigators, and state-of-the-art technology, the Group benefits from the vast experience,

1

commitment, and resources of the entire firm. In particular, one of the Group's investigator was the agent in charge of the FBI's investigation of ENRON and who retired from senior management with the Bureau—leads the investigative team of the Group. These investigators, who have investigated cyber-crime during their respective careers in the FBI, are unique assets available to the prosecution efforts of the firm and will play an important role in the factual investigation of this case.

4. My practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., Southern District of Texas—has concentrated on complex litigation and spans over 36 years, including consumer class actions for more than two-thirds of that time.

5. I have represented consumers in numerous privacy rights and data-breach cases, beginning with *In re DoubleClick Inc. Privacy Litigation*, No. 00-cv-0641-NRB (S.D.N.Y.), a seminal and formative privacy class action that settled in 2002 and involved DoubleClick's use of cookies to track the private activities of internet users. I also served as co-lead counsel in the successful prosecution and settlement of perhaps the two the largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). These cases involved the advocacy for and protection of the important privacy rights of a class comprising over 225 million individuals throughout the United States and its territories. My role as co-lead counsel in these cases is particularly noteworthy because they targeted the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis), which were defended by the largest law firms in the country. These cases successfully protected the privacy rights of consumers.

6. I also served as co-lead counsel in the successful resolution of the following privacy, non-data-breach class actions: *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million common fund), *Kehoe v. Fidelity Federal Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) ($50 million common fund), and *Pino v. Warranty Acceptance Corporation*, No. 05-cv-61576 (S.D. Fla.).

7. I have achieved noteworthy results in the settlement of a series of data breach cases. For example, I served as co-lead counsel in the MDL case *In re The Home Depot, Inc. Customer Data Security Data Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (consumer class cases) which was settled for $ 19.5 million, and lead counsel or co lead counsel in the following data-breach class cases: *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800 (S.D. Fla.); *Elyzabeth Ramirez v. ChenMed, LLC*, No. 14-12319-CA-04 (Fla. 11th Cir. Ct.); *Carsten v. University of Miami*, No. 1:14-cv-20497-KMW (S.D. Fla.); *John Doe v. Tampa General Hospital,* No. 14-CA-012657 (Fla. 13th Cir. Ct). The settlement of these cases provided substantial monetary and injunctive relief to class members.

8. I am lead counsel in the largest data breach case ever filed involving an estimated 2.9 billion users around the globe. *In re: Yahoo! Inc. Customer Data Security Breach Litigation, No. 16-MD-02752-LHK (N.D. Cal.).* I was appointed and presently serve on the presently serve on the Plaintiffs' Steering Committee in *In Re Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800 (N.D. Georgia).

9. I currently serve on the Executive Committee overseeing the consumer class, the financial institution class, and the shareholder derivative litigation pending in *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). As a member of the Overall Executive Committee, I also served on the Executive Committee of the

consumer class case and assisted in its prosecution and the negotiation of a class settlement. The settlement in the Target consumer litigation, which received final court approval in 2015, which was just upheld on appeal by the 8th Circuit Court of Appeals, provides a $10 million non-reversionary fund for distribution to consumers and important equitable relief to protect consumers' privacy rights.

10. Since the commence of this litigation, my co-counsel and I engaged in focused discovery designed to develop the necessary evidence and record to seek class certification and to litigated the case on the merits. No aspect of the preparation of the case for those goals was compromised or overlooked, and yet we understand well the complexity and risks of litigating the case where the Defendant denied liability for the liability of its franchises where the malware had infected the payment card systems resulting in the exfiltration of consumers' payment card data. We also understood the likely duration of the litigation which would be expensive to litigate to the end. We also consulted with a cyber-security expert to assist us with the technical aspects of the breach. By the time we entered into settlement negotiations in mediation and as will be described below, we were well informed with the relevant facts to give us the ability to evaluate the strengths and weaknesses of Plaintiffs claims against Defendant and those of the putative class, having reviewed over half a million documents equating to millions of pages and having taken numerous depositions.

11. On March 22, 2018, the parties engaged in settlement discussions with Mr. Lichter at Alston & Bird in Atlanta, Georgia. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length, and with the assistance of Mr. Lichter, the parties ended the day with an agreement in principle on many of the substantive terms of the Settlement. Counsel for the parties continued settlement discussions and negotiations in the

weeks following the mediation, at times enlisting the assistance of Mr. Lichter, until an agreement was reached on the relief to the class. The subject of attorneys' fees, costs and expenses, subject to Court approval, was negotiated only after substantive terms of the Settlement were agreed upon by the parties.

12. The parties reached a settlement, which in my opinion, provides monetary relief in the way in which class members are affected and damaged when information of the type in question in this case is compromised and exfiltrated by a cyber-criminal. I have handled a number of cases arising out of a data systems breach and spoken to many consumers who have been damaged by the compromise of this type of information. I have also consulted with experts in these cases and understand the range and type of damages that consumers can sustain. With this experience and with this information I was able to negotiate a settlement along with co-counsel which addresses those injuries. The results reached here in this settlement are well within the settlements I have negotiated in similar cases and which have been approved by other federal and state courts. The claim form which was prepared for distribution to class members is easily understood and was designed with simple, easy to understand language.

13. Class Counsel and I also considered that Wendy's, as the settling defendant, did not suffer a breach of its systems. Rather, the Security Incident occurred as a result of cybercriminals gaining access via third-party vendors to the data systems of approximately 1,025 Wendy's independently owned and operated franchisee restaurants. Wendy's corporate data systems and those of company-owned restaurants were not compromised as a result of the Security Incident.

14. In the Settlement, we were able to negotiate a release of claims that expressly excluded the third-party vendors and franchisee restaurants whose data systems were actually

compromised in the Security Incident. In exchange for the Settlement benefits, Settlement Class Members are releasing claims against Wendy's International LLC (and its related persons/entities), but claims against third parties, including WAND Corporation, NCR, DUMAC Business Systems, Inc. and impacted franchisees are expressly excluded from the Settlement Agreement. Settlement Class Members are not releasing any rights to pursue claims against the business entities directly involved in the Security Incident. The narrow release adds to the value of the benefits provided under the proposed Settlement.

15. The proposed Settlement provides significant benefits for Settlement Class Members that they otherwise may not receive, and based on the damages sustained by anyone class member and the expensive nature of litigation, a class member may not have sought to pursue their individual claims in litigation. A class action advances the purpose of advancing the interests of many individuals in one single forum.

16. I believe that the relief achieved through the settlement is close to if not the same relief we would have achieved had we taken the case to trial and succeeded.

17. The reaction of the Class has been extremely positive--more than 6,250 claims and no objections and no opt-outs have been received.

18. It is my opinion, and that of Class Counsel, that the settlement is fair, reasonable, and adequate and that the settlement should be given final approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of February, 2019 at Tampa, Florida.

/s/ John A. Yanchunis
JOHN A. YANCHUNIS, ESQ.